EDWARDS v. LESUEUR, *Secretary of State, Appellant.*

In Banc, February 5, 1896.

1. **Constitution**: STATUTE: CONSTITUTIONAL AMENDMENT. The power of the court to declare a statute void because in conflict with the constitution should not be exercised except in a very clear case, and the same is true in a greater degree in declaring proposed amendments to the constitution ineffectual.

2. ——: ——: ——. While the legislature in proposing to the voters amendments to the constitution must observe every substantial requirement relating to the mode and manner of their submission, the substance and extent of the amendments are left entirely and exclusively to the discretion of the general assembly.

3. ——: CONDITIONAL AMENDMENTS: INJUNCTION: CHANGE OF SEAT OF GOVERNMENT. The courts have no power to enjoin the submission of an amendment to the constitution, providing for a change of the seat of government of Missouri, because of provisions therein rendering the removal dependent on conditions to be complied with subsequent to the adoption of such amendment.

4. Seat of Government of Missouri, Removal of: CONSENT OF UNITED STATES. The consent of the United States is not necessary to an amendment to the state constitution changing the seat of government of Missouri from the land donated by the United States for that purpose.

5. ——: PROPERTY OWNERS: VESTED RIGHTS. Property owners in the city of Jefferson, the site of the seat of government of Missouri, have no such vested rights in its location as to prevent its removal to another place.

6. ——: ——: ——: COMPENSATION. The claim of property owners to compensation in case of such removal not being involved in this proceeding no opinion is expressed thereon.

7. Constitution: AMENDMENTS PROPOSED BY LEGISLATURE: READING IN EACH HOUSE. Under constitution, article 15, section 2, it is not necessary that a resolution proposing an amendment to the constitution be read on three different days in each house as in the case of an ordinary bill.

*Appeal from Cole Circuit Court.*—Hon. D. W. SHACKLEFORD, Judge.

REVERSED.

*R. F. Walker,* attorney general, *Lee & McKeighan* and *J. H. Bothwell* for appellant.

(1) The courts of this state have no legal power to enjoin the secretary of state in the performance of his constitutional and statutory duties in connection with the submission of the proposed amendment to the constitution of the state of Missouri, or to prevent the

qualified voters from ratifying or rejecting the said amendment in the manner provided in the constitution and statutes, unless the court first determines that the general assembly did not propose any amendment to the constitution in the mode prescribed in the organic law. See authorities cited under other points. (2) Missouri is a free and independent state, and all political power is vested in the people, from whom government originates, and who have the inherent, sole, and exclusive right to alter or revise their constitution to any extent they may choose, subject only to the limitations of the constitution of the United States. Constitution of Missouri, art. 2, secs. 1, 2 and 3; Cooley's Constitutional Limitations [6 Ed.], pp. 41 and 45, chap. 3; Black's Constitutional Law, pp. 44 to 49; Potter's Dwarris on Statutes and Constitutional Construction [1871 Ed.], 346, 347, 348; *Blair v. Ridgeley*, 41 Mo. 63; *Wells v. Bain*, 75 Pa. St. 39; *In Matter of Oliver Lee & Co.'s Bank*, 21 N. Y. 9. (3) The constitution of this state is specific, careful, and complete in its provision for originating and holding a convention for revising and amending the constitution; and where general revision or amendment is not considered necessary, the general assembly has full power to propose such specific amendments as a majority of the members elected to each house shall deem expedient. Constitution of Missouri, art. 15, secs. 1, 2, and 3. (4) A proposed constitutional amendment need not be read in each house of the general assembly on three separate days, nor need it take the course of a bill. The provisions of Missouri's constitution in this regard are in harmony with those of many other states, while others have different modes prescribed. Const. of Mo., art. 5, sec. 14; and art. 15, secs. 1 and 2; Jameson on Const. Conv. [4 Ed.], secs. 541, 542, 543; 3 Encyclopedia of Political Science, pp. 802, 803;

1 Stimpson's Am. Statute Law, p. 133, secs. 990–996. (5) In proposing an amendment to the constitution, the general assembly exercises delegated political power, not ordinary legislative authority. Its members may propose any specific amendment which they may deem expedient, and they are not limited by directions or restrictions made applicable by the constitution to ordinary legislative acts alone. The general assembly may, in the mode designated in the constitution, propose any specific amendment that might properly be framed and submitted by a convention. Const. of Mo., art. 15, secs. 1 and 2; Borgeaud's "Adoption and Amendment of Constitution," pp. 188, 323; Jameson on Const. Con. [4 Ed.], secs. 547 to 555, and cases cited; 1 Stimpson's Am. Statute Law, p. 133, secs. 990–996; 3 Encyclopedia of Political Science, p. 802; 1 Bryce's Am. Commonwealth [2 Ed.], pp. 419 to 423; *State v. Mason*, 9 So. Rep. 776; *Nesbit v. People*, 36 Pac. Rep. (Col.) 221; *State v. Cox*, 3 Eng. (Ark.) 436. (6) The only limitation on the power expressly delegated by the people to the general assembly to propose specific amendments to the constitution is the implied limitation which requires the general assembly to propose, pass, and submit such amendments in the mode or manner prescribed by the constitution itself. See authorities cited under other points. (7) The rulings of courts of last resort of various states show that wide latitude is indulged in favor of propositions to amend state constitutions; though the limitation as to the mode of proposing and ratifying an amendment will be enforced by the courts, both principle and precedent are against the proposition that the courts may determine either the form or substance of a constitutional amendment, or prevent its ratification, because its form or substance may not meet the approval of the court. Jameson's Constitutional Con-

ventions [4 Ed.], chap. 8, p. 9; *Trustees v. McIver*, 72 N. C. 76; *State ex rel. v. Gray*, 32 Pac. Rep. (Nev.) 191; *In Matter of Oliver Lee & Co.'s Bank*, 21 N. Y. 9; *Collier v. Frierson*, 24 Ala. 100; *Prohibitory Amendment Cases*, 24 Kan. 700; *State ex rel. v. Timme*, 54 Wis. 318; *State v. McBride*, 4 Mo. 303; *Worman v. Hagan*, 27 Atl. Rep. (Md.) 616; *State v. Mason*, 9 So. Rep. (La.) 776; *Nesbit v. People*, 36 Pac. Rep. (Col.) 221; *State ex rel. v. Tooker*, 25 Lawyers' Rep. Ann. (Mont.) 560; *State v. Cox*, 3 Eng. (Ark.) 436. (8) State constitutions now are not simply brief frameworks of state governments, defining fundamental rights or distributing and limiting delegated powers, but they are elaborate instruments, with many miscellaneous provisions not formerly found in written constitutions, and are often used to enact fundamental laws by ratification of the voters, which would otherwise be left to ordinary legislation, or be in conflict with other provisions of the organic law.   Const. of Mo., arts. 9, 10, 11, 12, 13, 14; 1 Stimpson's Am. Statute Law, sec. 1, introductory note to part 1; Borgeaud's "Adoption and Amendment of Constitutions," introductory note, pp. 9 and 10, 40, 146 to 151; 1 Bryce's Am. Commonwealth [2 Ed.], pp. 419, 429, 436, 438, 441, 442, and 447; Poore's "Charters and Constitutions," vols. 1 and 2; *State v. Mason*, 9 So. Rep. (La.) 776.   (9) No provision of the present or any former state constitution has ever expressly established the seat of government at Jefferson city.   The first constitution delegated to the legislature and to certain commissioners the necessary power to locate the seat of government, and it was their subsequent acts that resulted in locating the town and in fixing the capital there.   The establishment of the present seat of government at Jefferson City was brought about by acts of commissioners contributing to that end, by ministerial or executive acts, deriving their

power or authority from the constitution. Const. of Mo. of 1820, art. 11, secs. 1, 2, 3, and 4; Laws of Missouri, 1821, approved December 31; Same, 1822, approved January 11. (10) After the capital was established at Jefferson City, the people, by express constitutional limitation, subsequently withdrew from the legislative department the power to remove the seat of government by simple legislative act. But for that express limitation the seat of government might be removed by ordinary statute law, because the exceptions to a power granted mark its extent. Const. of Mo. 1865, art. 11, sec. 10; Same, 1875, art. 4, sec. 56; *Gibbons v. Ogden,* 9 Wheaton, 191; *Brown v. Maryland,* 12 Wheaton, 438; *Morris v. Powell,* 125 Ind. 281; *State ex rel. v. Cunningham,* 83 Wis. 90. (11) Neither in the "Enabling Act," passed by the congress in 1820, nor in the "Ordinance of Acceptance" of the constitutional convention of the state, will be found anything which deprives or limits the state in its sovereign right to reestablish its seat of government. Act of Congress, 1820, 1 R. S. Mo., pp. 47 to 50; Ordinance of Acceptance, 1820, 1 R. S. Mo., 1889, pp. 51 to 63; Cooley's Const. Lim. [6 Ed.], pp. 473, 474; 4 Am. and Eng. Encyclopedia of Law, 403; 2 Beach on Injunc., sec. 1390; *Armstrong v. Commissioners, etc.,* 4 Blackf. (Ind.) 208; *Elwell v. Tucker,* 1 Blackf. (Ind.) 285; *Newton v. Commissioners, etc.,* 26 Ohio St. 618; s. c., 100 U. S. 548; *Alley v. Denson,* 8 Tex. 297; *Gilmore v. Hayworth,* 26 Tex. 89; *Harrell v. Lynch,* 65 Tex. 149; *Adams v. County of Logan,* 11 Ill. 336; *Harris v. Shaw,* 13 Ill. 4; *Attorney General v. Board,* 33 Mich. 289. (12) The pending amendment will simply add something to the constitution, and will be complete and effective as a valid and binding expression of the people's will as soon as it is ratified. It does not delegate to anyone nor leave to any subsequent contingency the determi-

nation of the validity and binding force of the amendment. Its ratification by the people will be a final and effective decision and act, and all its provisions can then be enforced by observing its prescribed rules and limitations. (13) The legal force and validity of the proposed amendment will not depend upon the decision or actions of anyone, except upon its ratification by the qualified voters. Upon being ratified by the people, the proposed amendment will become binding and effectual as an authority to remove the capital on the conditions set forth. It will make lawful that which otherwise would be unlawful. Constitution of Mo., art. 15, sec. 2. (14) The actual exercise of powers conferred by a law is not essential to the legal force and validity of either a statute or a fundamental law. When the law has been enacted in due form, and is a complete and final expression of the will of the legislature, or of the people, then it will be valid and binding, even though its future effect and operation may be dependent or contingent on facts or conditions to arise or be brought about in the future, and which facts or conditions may possibly never arise or be found to exist. Sedgwick Const. of Stat. and Const. Law [2 Ed.], pp. 135 to 138, and cases cited; Cooley's Const. Lim. [6 Ed.], pp. 98 to 101, 137 to 146, and cases cited; First Constitution of Mo. (1820), "Seat of Government," art. 11, secs. 1, 2, 3 and 4; *Walton v. Greenwood*, 60 Me. 356; *State v. Parker*, 26 Vt. 357; *Pratt v. Allen*, 13 Conn. 119; *Lathrop v. Stedman*, 42 Conn. 583; *Newton v. Commissioners, etc.*, 26 Ohio St. 618; *Starin v. Genoa*, 23 N. Y. 439; *Bank v. Village*, 18 N. Y. 38; *Cargo v. United States*, 7 Cranch, 382; *State ex rel. v. Supervisors*, 24 Wis. 49; *Callam v. Saginaw*, 50 Mich. 7; *State ex rel. v. Pond*, 93 Mo. 606; *Ex parte Swan*, 96 Mo. 44; *Lammert v. Lidwell*, 62 Mo. 188; *St. Louis v. Alexander*, 23 Mo. 483; *Moers*

*v. Reading*, 21 Pa. St. 188; *Locke's Appeal*, 72 Pa. St. 491; *People ex rel. v. Bigler*, 5 Cal. 23.   (15) In construing the constitution of a state, or of any amendment proposed thereto, every department of government must examine the whole instrument, and give effect to the intent of the people.   Words are to be understood in their natural and ordinary sense, and a reasonable construction should be given to all parts.   Courts should resist all attempts of "interested subtlety and ingenious refinement" to force from these instruments a meaning which their framers never held.   Potter's Dwarris Stat. and Const. Construction [1871 Ed.], chap. 19, pp. 654 to 679; Cooley's Const. Lim. [6 Ed.], 52 to 54, 71 to 75, and cases cited; *People v. Gardner*, 45 N. Y. 812; *State ex rel. v. Tooker*, 25 Lawyers' Rep. Ann. (Mont.) 560.   (16) The rules by which acts of congress and acts of the general assembly must be interpreted, are essentially different, and that difference should be kept in view.   In passing on the constitutionality of acts of congress, the true rule is that the power of congress to enact the law, or to take the action under consideration, must affirmatively appear from the reading of the constitution of the United States, as the national government is one of the enumerated powers; but in considering state legislative acts the rule is that they are valid unless their conflict with the constitution of the state or of the United States can be pointed out, as the state government is possessed of all the general powers of legislation not prohibited or limited.   Cooley's Const. Lim. [6 Ed.], pp. 11, 205, 206; Black's Const. Law, p. 62, and cases cited; Potter's Dwarris Stat. and Constitutional Construction [1871 Ed.], 367, 368; Jameson's Constitutional Conv. [4 Ed.], secs. 88, 89, 90, 91.   (17) The courts are not the guardians of the people, except as

their rights are secured by some provision of law. There is no judicial power or discretion except legal power and discretion. For the courts to pass on the expediency, propriety, or reasonableness of legislative acts, or to interfere with the inherent and reserved right of the people to amend the fundamental law in the mode prescribed, would be an unwarranted exercise of powers not confided to the judicial department. Constitution of Mo., art. 3; art. 2, sec. 32; art. 4, sec. 56; art. 15, secs. 1 and 2; Cooley's Const. Lim. [6 Ed.]; chap. 7, pp. 192 to 222, and cases cited; Sedgwick Const. of Stat. and Const. Law [2 Ed.], pp. 154 to 159, and cases cited; *Walton v. Greenwood*, 60 Me. 356; *State v. Parker*, 28 Vt. 385; *Prohibitory Amendment Cases*, 24 Kan. 700; *State ex rel. v. Cunningham*, 83 Wis. 137; *Osborn v. Bank*, 9 Wheaton, 866; *Ex parte Railroad*, 45 Ala. 696. (18) The general assembly has necessarily the right to construe the constitution in exercising its delegated powers, and the courts will presume that legislative acts based on legislative construction of the organic law are constitutional, unless it is shown that the legislative act was and is void because necessarily repugnant to some specific clause of the constitution pointed out. With the clear delegation of unlimited power to propose any amendments to the constitution in the mode prescribed, every presumption is in favor of the constitutionality of the act of the general assembly. Cooley's Const. Lim. [6 Ed.], 54, 45, 192 to 222, *et seq.; State ex rel. v. Pond*, 93 Mo. 606; *Kelly v. Meeks*, 87 Mo. 396; *Phillips v. Railroad*, 86 Mo. 540; *State v. Addington*, 77 Mo. 110; *State ex rel. v. Laughlin*, 75 Mo. 147; *State v. Able*, 65 Mo. 357; *State ex rel. v. Railroad*, 48 Mo. 468; *Stephens v. Bank*, 43 Mo. 390; *Hamilton v. Judges*, 15 Mo. 13; *Edwards v. Williams*, 70 Ala. 145; *Ex parte Railroad*, 45 Ala. 696.

*Karnes, Holmes & Krauthoff, J. R. Edwards, H. Clay Ewing, A. M. Hough, J. C. Fisher, W. S. Pope, J. W. Zevely* and *Silver & Brown* for respondent.

(1) Plaintiff, as a citizen and taxpayer of the City of Jefferson, and of the state of Missouri, is entitled to maintain this injunction proceeding to contest the validity of the proposed constitutional amendment, and, if the same be invalid, to restrain the secretary of state from taking the steps provided for its submission to the voters of the state. *Livermore v. Waite*, 102 Cal. 113; *State v. Hughes*, 104 Mo. 459; (Testing constitutionality of act of legislature); *Francis v. Blair*, 89 Mo. 291; *Valle v. Ziegler*, 84 Mo. 214; *Ewing v. Board of Education*, 72 Mo. 436; *Wagner v. Meety*, 69 Mo. 150; *Ranney v. Bader*, 67 Mo. 476; *Matthis v. Town of Cameron*, 62 Mo. 504; *Rubey v. Shain*, 54 Mo. 207; *Newmeyer v. Railroad*, 52 Mo. 81; *State v. Saline Co.*, 51 Mo. 350; *Wells v. Bain*, 75 Pa. St. 40. (2) In many of these cases suits by the state, or by taxpayers, to enjoin illegal action of county courts, or to prevent municipalities from doing acts in violation of the constitution or laws of the state, were sustained. In *Newmeyer v. Railroad*, 52 Mo. 81; *Rubey v. Shain*, 54 Mo. 207, and *Ranney v. Bader*, 67 Mo. 476, it is distinctly held that a taxpayer, in his own name, and without joining the attorney general or the state, may sustain an injunction proceeding. (3) A court of equity will, on the application of resident taxpayers, restrain public officers from doing an illegal act where the effect of such act, if consummated, would be a waste of public funds raised by taxation. *Solomon v. Fleming*, 34 Neb. 40; *Laughlin v. Co. Board*, 3 N. M. 264; *Colton v. Hanchett*, 13 Ill. 615; *Galloway v. Railroad*, 63 N. C. 147. (4) So, too, the authorities establish that the question involved

in this proceeding is a judicial and not a political one. *Giddings v. Sec'y of State*, 93 Mich. 1; *Parker v. State*, 133 Ind. 178; *State, etc., v. Cunningham*, 81 Wis. 440; *State, etc., v. Cunningham*, 83 Wis. 90; *Hamilton v. Tucker County Court*, 38 W. Va. 71; *Krieschel v. Commissioners*, 41 Pac. Rep. 186. (5) And the acts of the secretary sought to be enjoined are purely ministerial and can be controlled by *mandamus* or injunction, as the exigencies of the case require. *State, etc., v. Cunningham*, 83 Wis. 90. "Where there is nonfeasance, *mandamus* compels duty, and where there is malfeasance, injunction restrains wrong; and so near are the objects of the two writs that there is sometimes a doubt as to which is the proper one. Injunction is frequently mandatory and *mandamus* sometimes operates as a restraint." (Per RYAN, C. J.) *Attorney General v. Railroad*, 35 Wis. 425, 520. (6) The proposed amendment, in the form submitted, is not authorized by the constitution, article 15, sections 1 and 2. *First.* The constitution expressly provides that "this constitution may be amended only in pursuance of the provisions of this article." Constitution, art. 15, sec. 1. *Second.* The constitution being amendable only in pursuance of the provisions contained in the constitution itself, the mode prescribed is the measure and the limit of the power to amend. *Russie v. Brazzell*, 128 Mo. 93; *State v. McBride*, 4 Mo. 303; *Collier v. Frierson*, 24 Ala. 100; *Prohibitory Amendment Cases*, 24 Kan. 700; *Answer of the Judges*, 6 Cush. 573; *State v. Swift*, 69 Ind. 505; *In re Convention*, 14 R. I. 649; *Koehler v. Hill*, 60 Iowa, 543; *State v. Tufly*, 19 Nev. 391; *Wells v. Bain*, 75 Pa. St. 40; *Oakland Pav. Co. v. Hilton*, 69 Cal. 479; *State, etc., v. Sec'y of State*, 43 La. Ann. 590; *Miller v. Johnson*, 92 Ky. 589, at p. 596; Cooley Const. Lim. [6 Ed.], pp. 42, 43; Jameson on Const. Conv., sec. 25.

*Third.* The general assembly, in proposing amendments to the constitution, does not act in the exercise of its legislative authority, but as a special agent empowered by an express grant. *Hatch v. Stoneman,* 66 Cal. 632; *Livermore v. Waite,* 102 Cal. 113; *In re Senate File,* 25 Neb. 864; *Nesbit v. People,* 36 Pac. Rep. (Col.) 221–223; Cooley Const. Lim. [6 Ed.], pp. 42, 44; Jameson on Const. Conv., sec. 25. *Fourth.* The state legislatures exercising their ordinary legislative functions have all such powers as have not been surrendered or prohibited to them. *Hall v. Wisconsin,* 103 U. S. 5, 11; Cooley Const. Lim. [6 Ed.], 206. *Fifth.* And from the foregoing flows the rule that all the presumptions are in favor of the constitutionality of an ordinary legislative enactment, and that it will not be held unconstitutional unless clearly so; obviously, the rule does not apply to constitutional amendments coming through the legislative department as a special agency, or having their origin in an express warrant. The power of the legislature "to initiate any change in the organic law, being a delegated power, is to be strictly construed." *Livermore v. Waite,* 102 Cal. 113. *Sixth.* The people of the state may impose a limit on their own power, and when this is done by the constitution, it must be regarded as as much a part of the paramount law, and as obligatory on the whole people, as any other part of the constitution. "A constitution is not lawfully changed by the votes of every elector in the state, unless in the mode provided for in it." *Oakland Pav. Co. v. Hilton,* 69 Cal. 489; Cooley Const. Lim. [6 Ed.], pp. 39, 93, 94. *Seventh.* The constitution is itself "a limitation on the power of the people". *Koehler v. Hill,* 60 Iowa, 568. *Eighth.* The constitution provides that "if a majority of the qualified voters of the state voting for or against any one of said amendments shall vote for such amendment, the same

shall be deemed and taken to have been ratified by the people, and shall be valid and binding to all intents and purposes as a part of this constitution." Const., art. 15, sec. 2. *Ninth.* The constitution obviously contemplates and means that the proposed amendment must be in such form that, on its ratification by the voters, it shall become a valid and binding part of the organic law. Our constitutional provision on this point is even more emphatic than that of the California constitution construed in *Livermore v. Waite, supra.* *Tenth.* It is equally obvious that such is not the character of the amendment before the court, because by its very terms it may never become operative, or a binding part of the constitution. *Eleventh.* The proposed amendment is vicious and invalid in that it substitutes for, or rather superadds to, the will of the people, another will or judgment without which its own will can have no effect, and which is, therefore, made the controlling judgment before the amendment can have any operative effect. *Livermore v. Waite,* 102 Cal. 123. *Twelfth.* The proposed amendment in this case is still "only a proposition for the people to submit to some other individuals or body to determine whether there shall be a change of the seat of government." *Livermore v. Waite, supra,* at 122, 123. The legislature is only permitted to submit an "amendment," not something that is not an amendment, under the designation of "an amendment." Cooley Const. Lim. [6 Ed.], p. 57, note. *Thirteenth.* The future event, the happening of the contingency, or the fulfillment of the condition on which a law, even in the case of an ordinary legislative enactment, takes effect, can afford no additional efficacy to the law; it must be "complete and effective when passed." *State ex rel. v. Wilcox,* 45 Mo. 458; *Lammert v. Lidwell,* 62 Mo. 188, 192. *Fourteenth.* It is a logical *felo de se*

to say it is, on its adoption by the people, a binding part of the constitution when by its terms and provisions it does not then, and may never so go into operation.   Const., art. 15, sec. 2.   *Fifteenth.*   "An unconstitutional enactment is not a law; it binds no one and protects no one."   *Little Rock, etc., v. Worthen,* 120 U. S. 97.   "It follows, therefore, that every department of the government, and every official of every department, may at any time when a duty is to be performed, be required to pass upon a question of constitional construction."   Cooley Const. Lim. [6 Ed.], p. 54.   *Sixteenth.*   The proposed amendment is further objectional because it involves the delegation of legislative power to the commissioners and other persons referred to therein.   *Ruggles v. Collier,* 43 Mo. 353; *St. Louis v. Clemens,* 43 Mo. 395; *Saline Co. v. Wilson,* 61 Mo. 237; *Matthews v. City of Alexandria,* 68 Mo. 115; *St. Louis v. Russell,* 116 Mo. 248; *St. Louis v. Howard,* 119 Mo. 41.   *Seventeenth.*   The acts to be performed by the persons referred to in order to effect an amendment to the constitution are not mere administrative functions involving the performance of ministerial duties only, but call for the exercise of discretion and duty on the part of the designated persons, and hence for the discharge of legislative functions.   See cases last cited, *supra.*   *Eighteenth.*   If the commissioners do not approve the tendered new buildings, others are not to be tendered indefinitely until suitable ones are obtained, so as to make the amendment finally effective; but the commissioners, by the exercise of their judgment and discretion in the premises, can nullify it, though adopted by the people, and thereby continue or reinstate the existing constitutional provision.   This is necessarily the exercise of a lawmaking power.   *Nineteenth.*   The proposed amendment is still only a proposition for the people to submit

to some other individuals or body to determine whether there shall be a change of the seat of government. *Livermore v. Waite, supra,* at 123. *Twentieth.* Nor can the the shortcomings of the proposed amendment be cured by the act of the legislature of March 18, 1895 (Acts. p. 95). *State ex rel. v. Kirkley,* 29 Md. 85; *Ruggles v. Collier,* 43 Mo. 353; *State ex rel. v. Boice,* 39 N. E. Rep. (Ind.) 64; *Folsom v. Township,* 59 Fed. Rep. 57; *Bank v. Noland Co.,* 59 Fed. Rep. 660; affirmed on appeal, 66 Fed. Rep. 883. *Twenty-first.* The general assembly can not by statute define the term "constitutional amendment" so as to bind the courts. Cooley Const. Lim. [6 Ed.], p. 57, note 1. *Twenty-second.* A law may be within the inhibitions of the constitution as well by implication as by expression. *City, etc., v. State,* 118 Ind. 426; Cooley Const. Lim. [6 Ed.], p. 207. *Twenty-third.* And when it is, it is the duty of the courts to so declare. *Page v. Allen,* 58 Pa. St. 338; *People v. Gilson,* 109 N. Y. 389. *Twenty-fourth.* The case of *Livermore v. Waite,* 102 Cal. 113, *supra,* should be followed as a controlling authority in the case at bar, because: (*a*) It was decided after full consideration by a court of high standing. (*b*) It is a judicial precedent directly in point. (*c*) The grounds of the decision are logical, reasonable, and just. (*d*) It was concurred in, so far as it affects the question in this case, by all the members of the court, seven in number. (*e*) It is manifest that the doctrine of the California court ought to be the law; it is promotive of permanency, stability, and certainty in the organic law; while the contrary rule would be subversive of such permanency, certainty, and stability, matters not to be overlooked by the judicial mind in the course of interpretation. "If there are any doubts what the law is, the judges may solve such doubts by considering what will be the good or bad effects of their

decision." Ramon Legal Judgment, p. 110, *et seq.*; *Kane v. Railroad*, 112 Mo. 35, also 135 N. Y. 506, 507. "The law that is the perfection of reason can not suffer anything that is inconvenient." Coke on Littleton, 97. The case of *State ex rel. v. Bigler*, 5 Cal. 23, can not affect or impair the weight of *Livermore v. Waite, supra*, as authority, for a number of reasons: *First.* It is inapplicable, for the reason that the construction of an ordinary act of a legislature, and not a constitutional provision, was there involved. *Second.* The questions decided in that case were as to the validity of the "condition subsequent," and whether it had been complied with, and whether the act could be defeated by a breach of such condition subsequent, and also as to the constitutionality of the removal act of the legislature. *Third.* The court was composed of three judges and the case was decided by a divided court; had really been decided the other way, and the change in the decision was the result of a change in the court. (7) The state can not, under the act admitting it into the union, and its ordinance accepting the same, change its permanent seat of government without the consent of the United States. *First.* The act of congress providing for the admission of the state into the union, *inter alia*, presented to the people of Missouri, for their acceptance or rejection, the proposition of the United States to give the state four entire sections of land for the purpose of fixing the permanent seat of government, said land to be located under the direction of the state legislature. The state not only accepted the foregoing proposition of the United States in its ordinance of acceptance, but further ordained and declared that said ordinance should be irrevocable without the consent of the United States. Congressional Act of Admission, R. S. Mo. 1825, pp. 35–39; Ordinance of Acceptance, R. S. Mo. 1825, pp. 40–42.

*Second.* The state, by virtue of the above binding provisions of law, fixed its permanent seat of government at the site now included in the City of Jefferson. Constitution 1820, art. 10; Act of December 31, 1821, 2 R. S. 1825, p. 722; Act of January 11, 1822, 2 R. S. 1825, p. 723; Act of December 19, 1822, 2 R. S. 1825, p, 724. *Third.* And by an act of its legislature, the state assumed the defense of suits against persons to whom it had sold lots in the City of Jefferson, pursuant to the provisions fixing the permanent seat of government. Laws of 1842-3, p. 73; *Lessieur v. Price*, 12 How. 59; *Lessieur v. Price,* 12 Mo. 14. The question is unlike that decided in *Newton v. Commissioners*, 100 U. S. 548, but similar to one in which a state, organizing a county, would, in the act providing for such organization, tender the county for its acceptance land for a county seat site, and at the same time provided that if the county accepted the offered land, the act of acceptance should be irrevocable in all its provisions, or without the consent of the state. When a state descends from the plane of its sovereignty, and enters into a contract, it is bound like an individual. *Davis v. Gray,* 16 Wall. 232; Cooley Const. Lim. [6 Ed.], p. 330. A state can no more impair the obligation of a contract by its organic law than by legislative enactment. Cooley Const. Lim. [6 Ed.], page 328, note 4. See *Cummings v. St. Louis*, 90 Mo. 259.

MACFARLANE, J.—This is a suit by plaintiff, as a property owner of Jefferson City, to restrain the secretary of state from discharging the duties enjoined upon him in respect to submitting to a vote of the electors of the state a proposal, passed by the last general assembly, for amending the constitution so as to provide therein for the removal of the seat of government from the City of Jefferson to the city of Sedalia.

The amendment was proposed under a concurrent resolution, and is as follows:

"Concurrent resolution submitting to the qualified voters of Missouri an amendment to the constitution thereof, providing for the removal of the seat of government from the City of Jefferson to the city of Sedalia.

"Be it resolved by the house of representatives, the senate concurring therein, as follows:

"At the general election to be held on Tuesday next following the first Monday in November, A. D. 1896, an amendment to the constitution of Missouri shall be submitted to the qualified voters of the state in the following words:

"The seat of government shall be removed from the City of Jefferson and located at the city of Sedalia. Any person or persons may grant and donate to the state any land, sum of money, or other thing of value, to be used for the purpose of erecting the necessary public buildings at the city of Sedalia, or may deposit with the governor sufficient securities or obligations to guarantee the erection of such buildings. Whenever a suitable capitol building, having the same or greater floor area and appointments as the present capitol and supreme court buildings, and equal thereto in stability and architectural merit, together with grounds of the same or greater area, and an armory building likewise similar or superior to the present armory, and an executive mansion likewise similar or superior to the present building used as the governor's residence, together with the grounds and appurtenances, shall be erected at the city of Sedalia, the same shall be accepted by a commission, consisting of the governor, secretary of state, auditor, treasurer, and attorney general, and such officers shall at once remove the public records and personal property to such new buildings, and the city

of Sedalia shall thereupon become the permanent seat of government. The plans and location of the capitol, armory, and executive mansion, and grounds shall first be approved by such commission. The county of Pettis and Sedalia township, in said county, may each vote an issue of five-twenty nontaxable three per cent bonds, not to exceed in amount, respectively for each, one hundred thousand dollars, and such bonds may be ordered issued by a majority vote of those voting at a special election called for that purpose by the county court, and conducted generally in the manner provided by law for the issuing of bonds for the erection of court-houses. Said county and township bonds shall be given to the state for the purpose of assisting in paying for the erection of the buildings provided for herein; and such bonds, if voted and issued, shall be delivered to the governor of the state, and held by him in trust for the benefit of any person or persons who may erect such suitable public buildings, to be given to such person or persons on their completion and acceptance. The commission hereby constituted shall have full power, by a majority vote, to carry out the provisions and intent of this amendment, and such new public buildings shall be completed, as near as may be possible, on or before the first day of November, A. D. 1899, unless such commission, for good cause, grant further time. The state shall in no manner become liable for, nor shall it pay any part whatever of the cost of the new public buildings herein provided for, and the county before mentioned shall pay the entire cost of moving the records and personal property of the state to the new public buildings, so that the state shall be at no expense whatever in the change of the seat of government.''

It is charged in the petition that said resolution is, and if adopted will be, invalid for the reason that it

does not provide that the same shall go into effect "as an operative amendment to said constitution, upon its adoption by a majority of the qualified voters of the state voting in favor thereof, but, on the contrary, by its terms and provisions its taking effect and becoming an operative and binding part of said constitution is made to depend on the further facts or condition that some person or persons shall donate or grant to the state land or money or other valuable thing for the purpose, or erect the necessary public buildings at the city of Sedalia for the use of the state, or shall deposit with the governor of the state sufficient securities or obligations to guarantee the erection of such building, and also on the further fact or condition that a suitable capitol building for the state of Missouri, having the same or greater floor area and appointments than the present capitol and supreme court buildings, and equal thereto in stability and architectural merit, together with grounds of the same or greater area than those now possessed by the state at the City of Jefferson, and also that a state armory and executive mansion similar or superior to the present ones owned by the state, together with grounds and appurtenances thereto, shall be erected or furnished at the city of Sedalia, and shall be accepted by a commission consisting of the governor, secretary of state, state auditor, treasurer, and attorney general of Missouri; and also on the further fact or condition that the plans and location of said new capitol building, armory, executive mansion, and grounds therefor shall be approved by said commission."

It is further charged that the resolution is invalid, and if adopted by the necessary vote of the people would not become an amendment to the constitution for the reason that it was not read on three different

days in each house of the general assembly, and did not take the course of a bill in said assembly.

A further charge is that by the act of congress admitting the state of Missouri into the union, the action of the convention of the territory called in pursuance of said act, and the subsequent legislation of the state in accepting and acting upon the conditions of said act, the seat of government was established at Jefferson City and can not be changed without the consent of the United States.

It was also charged in substance that under said enabling act and the acceptance thereof by the people of the territory certain lands were donated by the United States to the state of Missouri upon which to locate its seat of government, and such lands were sold by the state with the assurance to purchasers that the seat of government would permanently remain at the City of Jefferson, and such purchasers, and their assigns, relying on the good faith of the state, made valuable and lasting improvements thereon by reason of all which they acquired certain vested rights which should be protected and preserved.

A general demurrer to the petition was overruled, and, defendant refusing to plead further, judgment was rendered for plaintiff on the demurrer, and a perpetual injunction was granted. From this judgment defendant appealed.

I. It has been said that "the right of the judiciary to declare a statute void and to arrest its execution, is one which, in the opinion of all courts, is coupled with responsibilities so grave that it is never to be exercised except in very clear cases; one department of the government is bound to presume that another has acted rightly." *Railroad v. Casey*, 26 Pa. St. 287, quoted in *State v. Addington*, 77 Mo. 117.

The power and jurisdiction of the judiciary to de-

clare a proposal for an amendment to the constitution ineffectual, and to arrest its submission to the people, which we are now called upon to exercise, is coupled with far more serious responsibilities.   To so declare would wrest from the people the expressly reserved power to amend their organic law as they may deem fit and expedient.

In respect to the subject of amendments to the constitution that instrument declares:   "The people of this state have the inherent * * * right * * * to alter and abolish their constitution and form of government whenever they may deem it necessary to their safety and happiness:   *Provided*, such change be not repugnant to the constitution of the United States."   Section 2, art. 2, const. 1875.

That all just government is founded upon the consent of the people, is a maxim which has been held sacred by the American people since the declaration of independence in 1776.   Under our system the people are the source of all governmental power.   In recognition of this principle, the people of this state, first in delegated convention and afterward by their own voice through the polls, proclaimed in their bill of rights: Section 1.   "That all political power is vested in and derived from the people, that all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole."

Upon the adoption of the constitution of 1875 by a popular vote, the direct power of the people was withdrawn from governmental affairs, and the administration of the functions of government was delegated to the executive, legislative, and judicial departments of state, to be exercised by officers selected by the people, with such limitations upon the powers of each as they saw fit to impose.   But the right to govern was not

thereby surrendered or abandoned. The power was reserved to resume control, either of any special subject-matter by amendment of their organic law, or of the entire subject of government by means of a constitutional convention.

This reserved power is declared in sections 1, 2 and 3 of article 15. Sections 1 and 2 relating to amendments read:

Section 1. "This constitution may be amended and revised only in pursuance of the provisions of this article."

Sec. 2. "The general assembly may, at any time, propose such amendments to this constitution as a majority of the members elected to each house shall deem expedient; and the vote thereon shall be taken by yeas and nays, and entered in full on the journals. The proposed amendments shall be published with the laws of that session, and also shall be published weekly in some newspaper, if such there be, within each county in the state, for four consecutive weeks next preceding the general election the next ensuing. The proposed amendments shall be submitted to a vote of the people, each amendment separately, at the next general election thereafter, in such manner as the general assembly may provide. If a majority of the qualified voters of the state, voting for and against any one of said amendments, shall vote for such amendment, the same shall be deemed and taken to have been ratified by the people, and shall be valid and binding, to all intents and purposes, as a part of this constitution."

It will be seen that no measure of power over any governmental subject has been wholly surrendered. Power is retained, and, through the action of the general assembly, which is composed of the nearest representatives of the people, control may be resumed, over

any subject-matter, and changes made in the organic law in respect thereto.

It is true the general assembly can only propose amendments under the power delegated to it by the people. This power must be construed according to the general principles which govern courts in the construction of delegated powers. In the exercise of such power every substantial requirement must be observed and followed or there can be no valid amendment. In respect to the mode of proposal and submission, the provisions of the constitution must be regarded as absolute. The courts should not hesitate to see that the constitution is obeyed in these particulars. *State v. McBride*, 4 Mo. 306.

But whether the courts have jurisdiction to come between the people and their authorized and accredited agents and representatives, and arrest their will in respect to what the organic law should be, is an entirely different and more serious question. The constitution is intended for observance by the judiciary as well as other departments of government. The judges are sworn to support the constitution, and the provision for its amendment is as obligatory upon the courts as any other part of it.

"The general assembly may, at any time, propose such amendments to this constitution as a majority of the members elected to each house shall deem expedient" is the unequivocal letter of attorney given by the people. No stronger language could have been used to express authority as unlimited as the subject upon which the agent is authorized to act. The character, that is, the substance and extent, of the amendments, is left entirely and exclusively to the discretion of the general assembly. The right to propose is as unlimited as is the right to adopt by vote of the people themselves. It is as unlimited as would be the power of a

regularly called and constituted convention to propose specific provisions. The courts have nothing to do with the wisdom or policy of such proposal. The people have reserved the power of review to themselves. Amendments derive their force from the action of the people, and not from the action of the assembly which proposes them.

The power, or rather the want of power, in the courts, to review the policy or wisdom of constitutional amendments is thus expressed by Mr. Justice BREWER, then of the supreme court of Kansas, in *Prohibitory Amendment Cases*, 24 Kan. 706: "But questions of policy are not questions for the courts. They are wrought out and fought out in the legislature and before the people. Here the single question is one of power. We make no laws; we change no constitutions; we inaugurate no policy. When the legislature enacts a law, the only question which we can decide is, whether the limitations of the constitution have been infringed upon. When a constitutional amendment has been submitted, the single inquiry for us is, whether it has received the sanction of popular approval in the manner prescribed by the fundamental law. So that whatever may be the individual opinions of the justices of this court as to the wisdom or folly of any law or constitutional amendment, and notwithstanding the right which as individual citizens we may exercise with all other citizens in expressing through the ballot box our personal approval or disapproval of proposed constitutional changes, as a court, our single inquiry is, have constitutional requirements been observed, and limits of power been regarded. We have no veto."

There can be no doubt that the question of the establishment of the seat of government is one which is a proper subject of constitutional control, and is, therefore, a proper subject for amendment. If the peo-

ple had seen fit they could have given power to the general assembly to change the seat of government upon any terms it might require. Indeed, the power might have been delegated to the governor, or this court, or to commissioners, as was done by the convention of 1820. But no such power was granted, nor did the people remain silent on the subject and thus leave the matter to the discretion of the assembly, but negatived such power by declaring: "The general assembly shall have no power to remove the seat of government of this state from the City of Jefferson." Sec. 56, art. 4, const. 1875.

It is plain that in order to secure a removal of the capital an amendment to the constitution is necessary. The general assembly deemed it proper that the expediency of a removal to Sedalia should be submitted to the people. It is not seriously insisted that an unconditional proposal for removal would not have been valid. But it is insisted that the amendment as proposed is, and, though adopted by the people, would be, invalid on account of the conditions annexed thereto, and the powers delegated to certain officials.

What has been said in reference to the unlimited discretion of the general assembly should be a sufficient answer to this objection. The objection is directed against the wisdom of the measure and its expediency. As has been said, these are questions upon which the people are to pass, and over which the courts have no power. The amendment derives its force from the people and not from the legislature. If ratified "it shall be valid and binding to all intents and purposes as a part of this constitution," is the language of that instrument. Every condition and every delegation of power contained in the amendment will come direct from the people as a part of the organic law. The peo-

ple have placed no limitation on their own power in this respect.

It will be observed also that the amendment does not propose to effect a change in the location of the seat of government, but to provide the means by which a change can be effected. It might have delegated the power to the general assembly to make the change; instead of doing so it has provided a means much more complicated, but which the courts are bound to uphold and respect. The people are to judge of the practicability of the methods proposed. If the amendment is adopted it ceases to be a mere resolution of the assembly, and becomes "to all intents and purposes" a part of the constitution. The conditions will be imposed and the power will be delegated by the constitution itself.

Much reliance is placed by the plaintiff upon the authority of the case of *Livermore v. Waite*, 102 Cal. 114, in support of his position. While we have great respect for the supreme court of California, and the distinguished jurists who compose it, yet if the opinion is to be taken as holding that under such powers as our constitution confers upon the general assembly in respect to proposing amendments, a proposed amendment which, by the terms of the constitution is to become valid and binding to all intents and purposes upon its adoption by the people, will be ineffective because conditions are therein imposed and powers are thereby delegated, we are unwilling to give our assent to it. We do not deem it necessary to analyze that opinion in order to show that no such principle was announced, though expressions used by the judge who wrote the opinion may be open to such construction.

II.  The petition charges that by the act of congress admitting the state of Missouri into the union, the action of the convention called in pursuance of said

act, and subsequent legislation of the state in conform-
ity to the conditions of said act, the seat of govern-
ment was established at Jefferson City and can not be
removed therefrom without the consent of the United
States, or to the loss and injury of those who have
purchased and improved property in reliance upon the
obligation of the state to permanently maintain it there.

The control of the United States is supposed to
result from the terms of admission proposed by con-
gress and accepted by the convention. Section 6 of
the enabling act (p. 49, R. S. 1889), provided: "That
the following propositions be and the same are hereby
offered to the convention of the said territory of Mis-
souri, when formed, for their free acceptance or rejec-
tion, which, if accepted by the convention, shall be
obligatory upon the United States."

These propositions, five in number, provided for
grants of land by the United States to the state of Mis-
souri. The fourth proposition is as follows:

"*Fourth.* That four entire sections of land be and
the same are hereby granted to the said state, for the
purpose of fixing their seat of government thereon,
which said sections shall, under the direction of the
legislature of said state, be located, as near as may be,
in one body, at any time, in such townships and ranges
as the legislature aforesaid may select, on any of the
public lands of the United States."

These propositions were upon the condition that
the convention should provide "by an ordinance, irrev-
ocable without the consent of the United States, that
every and each tract of land sold by the United States,
from and after the first day of January next, shall
remain exempt from any tax laid by order or under the
authority of the state."

The convention of the territory in accepting the
terms of admission declared: "And this convention,

for and in behalf of the people inhabiting this state, and by the authority of said people, do further ordain, agree, and declare that this ordinance shall be irrevocable without the consent of the United States."

The convention also framed a constitution, article 9 of which was devoted to the subject of the seat of government of the state, and provided that the legislature should appoint five commissioners for the purpose of selecting the land to be donated, and also a permanent seat of government; if the four sections of land selected were not deemed suitable for a site they were authorized to select another, and to purchase the necessary land. If the land selected was approved the commissioners were authorized to lay out a town under the directions of the general assembly.

The commissioners were duly appointed by the general assembly; they selected land upon which the City of Jefferson is located; their selection was approved; a town was laid out; lots were sold by the state, and by an act of the legislature the permanent seat of government was located at the City of Jefferson where it has since remained.

The contention is that under those various proceedings the state became irrevocably bound to maintain its seat of government at Jefferson City, unless by the consent of the United States; and also that the property owners have secured vested rights in the location of the capital which the state has no power to take from them even by a constitutional amendment.

In answer to the first proposition it may be said in the first place that no such condition was coupled with the proposal submitted by the act of congress. The acceptance should not be construed to be broader than the offer. The irrevocable character of the ordinance must be construed to refer to the conditions which were required to be irrevocable.

In the second place the convention which accepted the terms proposed by congress, and which formed the state constitution, did not interpret the act as requiring that the seat of government should be located on the four sections of land which might be selected, for it provided that the commissioners might purchase other land upon which to locate its seat of government. The convention would hardly have made an irrevocable agreement and immediately proceeded to violate it.

Third, the act of admission required a copy of the constitution, when framed, to be transmitted to congress. We must presume that the convention did its duty in this regard and that congress knew the interpretation that had been given to the grant, and, as the state government has ever been recognized by the United States, that it was satisfied with such interpretation, and ratified it.

In the fourth place, the plain terms of the compact negative any intention of the United States to control the state in the future changes of its seat of government. The fourth section of the act authorized the convention to form its own constitution and state government, provided it should be republican in form and not repugnant to the constitution of the United States. No limitation whatever is placed upon its political or governmental power or the power to manage its own internal affairs. The power, then, to select and afterward, if deemed expedient, to change its own seat of government is necessarily implied.

III.   Nor have the property owners of the City of Jefferson secured such vested rights in the location of the seat of government by reason of any implied contract with the state, as will prevent its removal.

The constitution of 1820 declared the exclusive right of the people to regulate the internal government of the state and to alter their constitution whenever

deemed necessary to their safety and happiness. The reserved power is thus declared by the same convention that accepted the terms of admission of the state into the union. By this declaration the convention clearly negatives the idea of an intention to bind all future generations to forever maintain the seat of government at such place as might thereafter be selected by commissioners to be appointed by a future legislature.

But neither the convention nor the legislature had power in this respect to irrevocably bind the people of the state. The right of the people to establish and remove their seat of government at pleasure involves a governmental subject about which there can be no irrepealable law.

An injunction was sought to prevent the removal of a county seat, on the ground that the citizens had secured a vested right therein which a removal would violate. The case came before the supreme court of the United States. That court, speaking through Mr. Justice SWAYNE, after announcing the principle that one legislature could not bind another as to subjects of a governmental character, illustrated the proposition in this language:

"If a state capital were sought to be removed under the circumstances of this case with respect to the county seat, whatever the public exigencies, or the force of the public sentiment which demanded it, those interested, as are the plaintiffs in error, might, according to their argument, effectually forbid and prevent it; and this result would be brought about by means of a bill in equity and a perpetual injunction.   *   *   *   A proposition leading to such consequences must be unsound. The parent and the offspring are alike." *Newton v. Commissioners*, 100 U. S. 560.

The claim that property owners will be entitled to compensation in case of a removal is not involved in

this proceeding. The power to remove the seat of government does not depend upon the right to compensation. . On that question it would be improper for us to express an opinion in advance.

IV. Another ground upon which the resolution is claimed to be invalid is that it was not read on three different days in each house of the general assembly, and did not, in other respects, take the course required by the constitution in ordinary legislation.

The provision for adopting resolutions proposing amendments is distinct from, and independent of, all provisions which are provided for the government of legislative proceedings. The provisions are in themselves complete and are not in *pari materia* with those required in the passage of a bill.

The general assembly in proposing amendments does not, strictly speaking, exercise ordinary legislative power. It acts in behalf of the people of the state under an express and independent power. The mode of its exercise is prescribed and must be observed, but the assembly is not required to look outside its power of attorney to ascertain its duty. It is only required, and it is therefore only necessary, that the vote be taken by yeas and nays and entered in full on the journals. That this was done is not disputed.

We are of the opinion that the proposed amendment, if adopted by the people in the manner prescribed by the constitution, would be effectual as a part of the organic law of the state.

We have not discussed the question whether the remedy by injunction is, in any event, available for the purposes contemplated in this case, because defendant has expressly waived that question, and requested a decision on the broader grounds which we have accordingly considered. The judgment of the circuit court

is reversed. BRACE, C. J., and SHERWOOD and ROBINSON, JJ., concur. BARCLAY, J., concurs in the judgment for the reasons stated in paragraphs 1 and 4. GANTT and BURGESS, JJ., do not sit.