3 U.S. 378
 3 Dall. 378
 1 L.Ed. 644
 Hollingsworth, et al.
v.
Virginia.
 February Term, 1798.
 
 1
 The decision of the Court, in the case of Chisholm, Ex'or. versus Georgia, (2 Dall. Rep.419) produced a proposition in Congress, for amending the Constitution of the United States, according to the following terms:
 
 
 2
 'The Judicial power of the United States shall not be construed to extend to any suit in law and equity, commenced or prosecuted against one of the United States, by citizens of another state, or by citizens or subjects of any foreign state.'
 
 
 3
 The proposition being now adopted by the constitutional number of States, Lee Attorney-general, submitted this question to the Court, Whether the Amendment did, or did not, supersede all suits depending, as well as prevent the institution of new suits, against any one of the United States, by citizens of another State?
 
 
 4
 W. Tilghman and Rawle, argued in the negative, contending, that the jurisdiction of the Court was unimpaired, in relation to all suits instituted, previously to the adoption of the amendment. They promised, that it would be a great hardship, that persons legally suing, should be deprived of a right of action, or be condemned to the payment of costs, by an amendment of the Constitution ex post facto; 4 Bac. Abr. 636 7. pl. 5. And that the jurisdiction binder, before regularly established, the amendment notwithstanding the words 'shall not be construed,' etc. must be considered, in fact, as introductory of a new system of judicial authority. There are, however, two objections to be discussed: 1st. The amendment has not been proposed in the form prescribed by the Constitution, and, therefore, it is void. Upon an inspection of the original roll, it appears that the amendment was never submitted to the President for his approbation. The Constitution declares that 'every order, resolution, or vote, to which the concurrence of the Senate and House of Representatives may be necessary (except on a question of adjournment) shall be presented to the President of the United States; and before the same shall take effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives, etc.' Art. 1. s.7. Now, the Constitution, likewise declares, that the concurrence of both Houses shall be necessary to a proposition for amendments. Art. 5. And it is no answer to the objection, to observe, that as two thirds of both Houses are required to originate the proposition, it would be nugatory to return it with the President's negative, to be repassed by the same number; since the reasons assigned for his disapprobation might be so satisfactory as to reduce the majority below the constitutional proportion. The concurrence of the President is required in matters of infinitely less importance; and whether on subjects of ordinary legislation, or of constitutional amendments, the expression is the same, and equally applies to the act of both Houses of Congress.
 
 
 5
 2nd. The second objection arises from the terms of the amendment itself. The words 'commenced or prosecuted,' are properly in the past time; but, it is clear, that they ought not to be so gramatically restricted; for, then, a citizen need only discontinue his present suit, and commence another, in order to give the court cognizance of the cause. To avoid this evident absurdity, the words must be construed to apply only to suits to be 'commenced and prosecuted.' The spirit of the constitution is opposed to every thing in the nature of an ex post facto law can be passed by the Legislature of any individual State. Ibid. s. 10. It is true, that an amendment to the Constitution cannot be controuled by those provisions; and if the words were explicit and positive, to produce the retrospective effect contended for, they must prevail. But the words are doubtful; and, therefore, they ought to be so construed, as to conform to the general principle of the Constitution.* In 4 Bac. Abr. 650. pl.64. it is stated, that 'a statute shall never have an equitable construction, in order to overthrow an estate;' but, if the opposite doctrine prevails, it is obvious that many vested rights will be affected, many estates will be overthrown. For instance; Georgia has made and unmade grants of land, and to compel a resort to her courts, is, in effect, overthrowing the estate of the grantees. So, in the same book (p. 652.pl.91. 92.) it is said, that 'a statute ought to be so construed, that no man, who is innocent, be punished or endamaged;' and 'no statute shall be construed in such manner, as to be inconvenient or against reason:' whereas the proposed construction of the amendment would be highly injurious to innocent persons; and, driving them from the jurisdiction of this court saddled with costs, is against every principle of justice, reason, and convenience. Presuming, then, that there will be a disposition to support any rational exposition, which avoids such mischievous consequences, it is to be observed, that the words 'commenced and prosecuted' are sinonimous. There was no necessity for using the word 'commenced,' as it is implied and included in the word 'prosecuted;' and admitting this glossary, the amendment will only affect the future jurisdiction of the court. It may be said, however, that the word 'commenced' is used in relation to future suits, and that the word 'prosecuted' is applied to suits previously instituted. But it will be sufficient to answer, in favor of the benign construction, for which the Plaintiffs contend, that the word 'commencing' may, on this ground, be confined to actions originally instituted here, and the word 'prosecuted' to suits brought hither by writ of error, or appeal. For, it is to be shown, that a state may be sued originally, and yet not in the Supreme Court, though the Supreme Court will have an appellate jurisdiction; as where the laws of a state authorize such suits in her own courts, and there is drawn in question the validity of a treaty, or statute of, or authority exercised under, the United States, and the decision is against their validity. 1 Vol. p. 58. s.13. p. 63. s. 25. Upon the whole, the words of the amendment are ambiguous and obscure; but as they are susceptible of an interpretation, which will prevent the mischief of an ex post facto Constitution (worse than an ex post facto law, in as much as it is not so easily rescinded, or repealed) that interpretation ought to be preferred.
 
 
 6
 Lee, Attorney General. The case before the court, is that of a suit against a state, in which the Defendant has never entered an appearance: but the amendment is equally operative in all the cases against states, where there has been an appearance, or even where there have been a trial and judgment. An amendment of the constitution, and the repeal of a law, are not, manifestly, on the same footing: Nor can an explanatory law be expounded by foreign matter. The amendment, in the present instance, is merely explanatory, in substance, as well as language. From the moment those who gave the power to sue a state, revoked and annulled it, the power ceased to be a part of the constitution; and if it does not exist there, it cannot in any degree be found, or exercised, else where. The policy and rules, which in relation to ordinary acts of legislation, declare that no ex post facto law shall be passed, do not apply to the formation, or amendment, of a constitution. The people limit and restrain the power of the legislature, acting under a delegated authority; but they impose no restraint on themselves. They could have said by an amendment to the constitution, that no judicial authority should be exercised, in any case, under the United States; and, if they had said so, could a court be held, or a judge proceed, on any judicial business, past or future, from the moment of adopting the amendment? On general ground, then, it was in the power of the people to annihilate the whole, and the question is, whether they have annihilated a part, of the judicial authority of the United States? Two objections are made: 1st, That the amendment has not been proposed in due form. But has not the same course been pursued relative to all the other amendments, that have been adopted?* And the case of amendments is evidently a substantive act, unconnected with the ordinary business of legislation, and not within the policy, or terms, of investing the President with a qualified negative on the acts and resolutions of Congress. 2nd, That the amendment itself only applies to future suits. But whatever force there may be in the rules for construing statutes, they cannot be applied to the present case. It was the policy of the people to cut off that branch of the judicial power, which had been supposed to authorize suits by individuals against states; and the words being so extended as to support that policy, will equally apply to the past and to the future. A law, however, cannot be denominated retrospective, or ex post facto, which merely changes the remedy, but does not affect the right: In all the states, in some form or other, a remedy is furnished for the fair claims of individuals against the respective governments. The amendment is paramount to all the laws of the union; and if any part of the judicial act is in opposition to it, that part must be expunged. There can be no amendment of the constitution, indeed, which may not, in some respect, be called ex post facto; but the moment it is adopted, the power that it gives, or takes away, begins to operate, or ceases to exist.
 
 
 7
 The Court, on the day succeeding the argument, delivered an unnanimous opinion, that the amendment being constitutionally adopted, there could not be exercised any jurisdiction, in any case, past or future, in which a state was sued by the citizens of another state, or by citizens, or subjects, of any foreign state.
 
 
 
 *
 Chase, Justice. The words 'commenced and prosecuted,' standing alone, would embrace cases both past and future.
 W. Tilghman. But if the court can construe them, so as to confine their operation to future cases, they will do it, in order to avoid the effect of an ex post facto law, which is evidently contrary to the spirit of the constitution.
 
 
 *
 Chase, Justice. There can, surely, be no necessity to answer that argument. The negative of the President applies only to the ordinary cases of legislation: He has nothing to do with the proposition, or adoption, of amendments to the Constitution.