STATE OF MISSOURI at the relation of P. A. TATE, Relator, v. NIKE G. SEVIER.—62 S. W. (2d) 895.

Court en Banc, August 14, 1933.

*Gus O. Nations* for petitioner.

FRANK, J.—The Fifty-seventh General Assembly enacted and the Governor approved House Bill 514. The purpose of this bill as expressed in its title is as follows:

"An act authorizing the Governor, by proclamation to call an election for the election of delegates to a state convention, to be held for the purpose of voting upon the ratification of any amendment to the Constitution of the United States of America, proposed by the Congress thereof, and submitted to the several states for ratification by convention method; providing for the nomination of candidates for delegates to such conventions, and the manner of their election; and making the laws of this State, in so far as such laws will apply, applicable to the election of such delegates."

On July 21, 1933, P. A. Tate, petitioner herein tendered to the Secretary of State for filing a petition asking that said House Bill 514 be referred to the people for their approval or rejection at the polls as provided by the initiative and referendum provisions of the Constitution and statutes of the State. The Secretary of State refused to accept or file the petition. Thereafter, on July 26, 1933, petitioner filed a petition in the Circuit Court of Cole County praying said court to forthwith issue its alternative writ of mandamus directing and ordering the Secretary of State to accept and file said referendum petition, or show cause why he should not do so; that said cause be advanced on the docket and heard and determined without delay, and that a peremptory writ of mandamus be issued commanding said Secretary of State to accept and file said referendum petition, and for all further necessary relief. When this petition was filed in the circuit court on July 26, the judge of that court refused to issue an alternative writ at that time, but stated that he would decide on July 29, whether or not the writ would issue. On July 29, in open court, after some discussion, the judge announced "The issuance of the alternative writ is refused." A

record of the refusal of the writ and the dismissal of the petition appears on the judge's docket. Thereafter on the same day, July 29, 1933, petitioner filed in this court his petition asking that our writ of mandamus issue to the Judge of the Circuit Court of Cole County, commanding him to reinstate petitioner's petition, advance said cause on the docket and proceed to hear and determine same as provided by law.

Parties opposing the issuance of our writ contend that neither the petition filed in the circuit court nor the petition filed in this court, state facts sufficient to authorize the issuance of an alternative writ. Our ruling on the merits will dispose of this contention.

Section 57 of Article IV of the Constitution of this State provides that the legislative authority of the State shall be vested in a legislative assembly, consisting of a Senate and a House of Representatives but the people reserve to themselves power to propose laws and amendments to the Constitution, and to enact or reject same at the polls, independent of the legislative assembly and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly.

If House Bill 514 comes within the initiative and referendum provisions of the Constitution, it may be referred to the people for their adoption or rejection at the polls. Otherwise stated, if House Bill 514 is an *"act of the legislative assembly"* within the meaning of the initiative and referendum provisions of the Constitution it is subject to the referendum. A proper determination of that question necessarily settles this case.

The Federal Constitution is the fundamental law of the land and cannot be changed or amended except in the manner provided in Article V thereof, the pertinent parts of which read as follows:

"The Congress, whenever two-thirds of both houses shall deem it necessary, shall propose amendments to this Constitution, or, on the application of the Legislatures of two-thirds of the several states, shall call a convention for proposing amendments, which in either case shall be valid to all intents and purposes as a part of this Constitution, when ratified by the Legislatures of three-fourths of the several states, or by conventions in three-fourths thereof, as the one or the other mode of ratification may be proposed by congress. . . ."

Article V provides two methods of proposing amendments to the Federal Constitution, and two methods of ratification by the states. Amendments must be proposed either by the Congress or by a convention called by the Congress upon request of the Legislatures of two-thirds of the several states. When an amendment is proposed by either method, it does not become effective until ratified by the Legislatures of three-fourths of the several states, or by conventions in three-fourths thereof. Article V also provides that the Congress

shall propose which of the two methods of ratification the states shall follow in passing on a proposed amendment.

■■ It is settled law that the act of a state in ratifying or rejecting a proposed amendment to the Federal Constitution is not a legislative act within the meaning. of the initiative and referendum provisions of the Constitution and laws of the various states. When the Eighteenth Amendment to the Federal Constitution was proposed for ratification by the Legislatures of the various states, the Legislature of Ohio ratified the amendment. Parties opposed to such ratification sought to refer the act of the Legislature to the people for their approval or rejection at the polls. At that time a provision of the Constitution of Ohio adopted in November, 1918, extended the referendum to the ratification by the General Assembly of proposed amendments to the Federal Constitution. A suit was brought in the Court of Common Pleas of Franklin County, Ohio, to restrain the Secretary of State from preparing ballots for submission of a referendum. That court sustained a demurrer to the petition. This judgment was affirmed by the Court of Appeals of Franklin County and later by the Supreme Court of Ohio, and the case was appealed to the Supreme Court of the United States, where it was held that the constitutional provision of Ohio extending the referendum to the ratification by the General Assembly of proposed amendments to the Federal Constitution, was in direct conflict with Article V of the Federal Constitution which does not permit the people to vote directly on the ratification or rejection of an amendment. In course of the opinion the court further said:

". . . ratification by a state of a constitutional amendment is not an act of legislation within the proper sense of the word. It is but the expression of the assent of the State to a proposed amendment."

The opinion concludes by holding that the requirement of Article V of the Federal Constitution as to the expression of assent or dissent to a proposed amendment to the Constitution does not authorize or require legislative action. [Hawke v. Smith, 253 U. S. 221, 64 L. Ed. 871, 10 A. L. R. 1504, 40 Sup. Ct. 495.]

In the State of Maine it was sought to subject to a referendum the act of the Legislature in ratifying the Eighteenth Amendment to the Federal Constitution. In denying the right to a referendum, that court said:

"The State Legislature in ratifying the amendment, as Congress in proposing it, is not, strictly speaking, acting in the discharge of legislative duties and functions as a lawmaking body, but is acting in behalf of and as representatives of the people as a ratifying body under the power expressly conferred upon it by Article V" of the Federal Constitution. [In re Opinion of the Justices of the Supreme Court of Maine, 118 Me. 544, 107 Atl. 673.]

■ The ratification or rejection of an amendment to the Federal Constitution is a Federal function derived from the Federal Constitution itself. By the adoption of Article V of the Federal Constitution the people divested themselves of all authority to either purpose or ratify amendments to the Constitution. By the same article they vested the power to propose amendments in the Congress and in a convention called by Congress, and designated the state Legislatures and state conventions as representatives of the people, with authority to ratify or reject proposed amendments to the Constitution. When a state Legislature performs any act looking to the ratification or rejection of an amendment to the Federal Constitution, it is not acting in accordance with any power given to it by the State Constitution, but is exercising a power conferred upon it by the Federal Constitution. Of this question the Supreme Court of the State of Colorado in the case of Prior v. Noland, 188 Pac. 729, 731, said:

"In ordinary legislative matters, the General Assembly, of course, derives its power from the people of the State, and the people may reserve to themselves any power they desire; but, in the matter of the ratification of a proposed amendment to the Federal Constitution, the General Assembly does not act in pursuance of any power delegated or given to it by the State Constitution, but exercises a power which it possesses by virtue of the fifth article of the Constitution of the United States. That article provides that proposed amendments 'shall be valid . . . as parts of this Constitution, when ratified by the Legislatures of three-fourths of the several states.' A ratification by a General Assembly, of a proposed amendment to the Federal Constitution, is not, therefore lawmaking legislation for the State, subject to approval or rejection by the referendum."

■■ The same thing may be said in the case at bar. Our State Constitution does not authorize the Legislature to set up the machinery by which a convention may be assembled to ratify or reject an amendment to the Federal Constitution. That authority emanates from the Federal Constitution. Article V thereof provides that the Congress shall determine whether ratification shall be by conventions in the several states, or by the Legislatures thereof. When the Congress proposes an amendment for ratification by conventions, although it does not provide how and by whom such conventions shall be assembled, its direction that the ratification shall be by conventions, necessarily implies authority to provide for the assembling of such conventions. ■ It therefore follows that when the Legislature enacted House Bill 514 which provides the method for assembling a convention, it was not, strictly speaking, performing the functions of a legislative body for the State, but was acting as a representative of the people, pursuant to authority delegated to it by the Federal

Constitution to provide a method for obtaining and assembling conventions to represent the people in ratifying or rejecting proposed amendments to the Federal Constitution. Such enactment was, therefore, not lawmaking for the State, and for that reason is not subject to the referendum.

■ It is not claimed that the final act of the State in ratifying or rejecting a proposed amendment would be subject to the referendum. The contention is that House Bill 514 which provides for the calling of the convention is a general law enacted by the Legislative Assembly and for that reason is subject to the referendum.

Without doubt the enactment of House Bill 514, providing for the assembling of the convention, was but a necessary preliminary step preparatory to the final action of the State acting through the convention. If the final action of the convention is not a legislative act, it must logically follow that a preliminary step preparatory to such final action is not a legislative act. It is a familiar adage that the whole is not different from the parts of which it is composed. Under any view of the case, House Bill 514 is not an act of the Legislative Assembly within the meaning of the referendum provisions of the State Constitution, and for that reason is not subject to the referendum.

The exact question presented in this case was decided by the Supreme Court of Ohio on July 12, 1933, in the case of Thomas J. Donnelly v. George S. Myers, Secretary of State, 186 N. E. 918. The facts of that case show that after the Seventy-second Congress proposed an amendment to the Federal Constitution repealing the Eighteenth Amendment, the General Assembly of Ohio enacted Senate Bill No. 204 setting up the machinery for the calling of a convention to pass upon amendments to the Federal Constitution. Thereafter on June 21, 1933, a petition purporting to be signed by the requisite number of persons, seeking a referendum on Senate Bill No. 204 was filed with the Secretary of State. A suit was brought to prohibit the Secretary of State from submitting the question to a vote of the people. The question thus presented to the Supreme Court of Ohio is the exact question which is presented in the case at bar. In denying the right to a referendum the Supreme Court of Ohio said:

"Under the decision of the Supreme Court of the United States in Hawke v. Smith, Secretary of State, 253 U. S. 221, there can be no referendum upon the decision of a State Legislature to ratify or to reject a proposed amendment to the Federal Constitution. By a parity of reasoning, there could be no referendum upon the final action of a convention ratifying or rejecting such a proposal.

"We are here concerned, however, not with an attempted referendum upon such final action, but with an attempted referendum upon an act of the State Legislature setting up the machinery by which a convention may be assembled to take such final action.

"In our opinion, however, the calling of such convention is but a step necessary and incidental to the final action of the convention in registering the voice of the State upon the amendment proposed by the Congress. The action of the Legislature in performing this function rests upon the authority of Article V of the Constitution of the United States. It is a federal function, which in the absence of action by the Congress, the State Legislature is authorized to perform. [Lesser v. Garnett, 258 U. S. 137; Smiley v. Holm, 285 U. S. 355.] The mode of assembling the convention set up in Amended Senate Bill No. 204 provides for a vote by all of the electors of the State upon the selection of all of the delegates. The views of the candidates, for election as delegates to the convention, will be known in advance, so that the final action of the convention should be truly representative of the will of the people upon the one special question involved. The intent of Article V of the Constitution of the United States will therefore be effectuated by this action of the State Legislature.

"We are of the opinion, therefore, that the referendum provisions of the Constitution and the laws of Ohio have no application to Amended Senate Bill No. 204, and the demurrer to the petition of the relator is accordingly overruled."

Petitioner contends that because of the provisions of Section 10705, Revised Statutes 1929, it was the duty of the circuit court to issue an alternative writ of mandamus and its refusal to do so was a refusal to exercise jurisdiction.

We know from the proceedings filed in this court that petitioner is seeking a referendum on House Bill No. 514. We also know, because of reasons heretofore stated, that House Bill No. 514 is not subject to the referendum. Whether the circuit court was right or wrong in refusing its writ is wholly immaterial to a proper determination of this case. We will not compel that court to issue an alternative writ when we know it would have to be quashed on final hearing and a peremptory writ denied because House Bill No. 514 is not subject to the referendum. Courts do not sit to do useless things. The rule which governs such situations is tersely and correctly stated in 38 Corpus Juris, 909, section 653, as follows:

"The writ will be denied where it appears that a peremptory writ should not issue, thus avoiding delay and expense to the parties."

For the reasons stated, we should refuse to issue our alternative writ of mandamus. It is so ordered. All concur.