The STATE of Missouri at the Relation of the CITY OF CHARLESTON, a City of the Third Class, in Mississippi County, Missouri, Relator,

v.

Haskell HOLMAN, State Auditor of Missouri, Respondent.

No. 49119.

Supreme Court of Missouri,

En Banc.

Feb. 28, 1962.

Rehearing Denied April 9, 1962.

ton, Mississippi County, Missouri, seeks to compel the respondent, Haskell Holman, State Auditor of Missouri, to register and certify, under the provisions of Section 108.240 RSMo 1959, V.A.M.S., the validity of one of an issue of $300,000 of general obligation bonds recently approved by the voters of said city. Respondent waived issuance of the alternative writ and filed a return denying the legality of said bond on grounds hereinafter set forth. Thereafter, the parties, by stipulation filed, submitted the cause on briefs. The facts are not in dispute.

Relator is a city of the third class operating under city manager form of government. Its petition alleges and the exhibits attached thereto show that the proceedings held by the city for the issuance of said bonds were predicated upon the provisions of § 23(a) of Article VI of the Constitution of Missouri, V.A.M.S., as implemented by Laws 1961, H.B. 41 and 370, §§ 71.790–71.-850, Cum.Supp. 1961, RSMo 1959, V.A.M.S., August 1961 Pamphlet No. 3.

The incorporation of § 23(a), an entirely new provision, and § 27, which is amendatory of original § 27 of Article VI, into Article VI of the constitution was submitted to the people under proposed Constitutional Amendment No. 4. Laws 1959, Resolutions, page 10(a). That amendment was approved by a vote of the people at an election held on November 8, 1960. Cum.Supp. 1961, RSMo 1959, p. 44, V.A.M.S. June 1961 Pamphlet No. 2.

Section 23(a), Article VI, provides:

"By vote of two-thirds of the qualified electors thereof voting thereon, any city or incorporated town or village within any county in this state which has less than four hundred thousand inhabitants according to the last preceding federal decennial census, may become indebted for and may purchase, construct, extend or improve plants to be leased or otherwise disposed of pursuant to law to private

W. Clifton Banta, Charleston, for relator.

Thomas F. Eagleton, Atty. Gen., C. B. Burns, Asst. Atty. Gen., Jefferson City, for respondent.

HOLLINGSWORTH, Judge.

This is an original proceeding in mandamus, wherein relator, the City of Charles-

persons or corporations for manufacturing and industrial development purposes, including the real estate, buildings, fixtures and machinery; and the indebtedness incurred hereunder shall not be subject to the provisions of Sections 26(a), 26(b), 26(c), 26(d) and 26(e) of Article VI of this Constitution; provided, such indebtedness incurred hereunder for this purpose shall not exceed ten per cent of the value of taxable tangible property in said city, or incorporated town or village as shown by the last completed assessment for state and county purposes."

Section 27, Article VI, provides:

"Any city or incorporated town or village in this state, by vote of four-sevenths of the qualified electors thereof voting thereon, may issue and sell its negotiable interest bearing revenue bonds for the purpose of paying all or part of the cost of purchasing, constructing, extending or improving any of the following: (1) revenue producing water, gas or electric light works, heating or power plants; (2) plants to be leased to private persons or corporations for manufacturing and industrial development purposes, including the real estate, buildings, fixtures and machinery; or (3) airports; to be owned exclusively by the municipality, the cost of operation and maintenance and the principal and interest of the bonds to be payable solely from the revenues derived by the municipality from the operation of the utility or the lease of the plant."

Thereafter, by enactment of H.B. 41 and 370, Laws 1961, §§ 71.790–71.850, 1961 Cum. Supp. RSMo 1959, V.A.M.S., the legislature undertook to implement the provisions of §§ 23(a) and 27 of Article VI. That act provides the proceedings required for (1) the issuance of general obligation bonds for a project for industrial development as authorized by § 23(a); and (2) the issu-

ance of revenue bonds for such a project as authorized by § 27.

The aforesaid act was passed and thereafter approved on June 26, 1961. It carries an emergency clause, the legality of which is challenged. It reads as follows:

"Since existing laws are inadequate to permit municipalities to promote their industrial development, and since industries desiring to locate in the state of Missouri will not wait for an extended time before making commitments for new locations, and since municipalities within the state of Missouri are presently at a disadvantage in competing with municipalities in other states in attracting new industries, the peace, health and safety of the citizens of the state of Missouri are in jeopardy and an emergency exists within the meaning of the constitution. This act, therefore, shall be in full force and effect immediately upon its passage and approval."

The city, on August 14, 1961, proceeding in accordance with the provisions of the aforesaid enabling act, adopted an ordinance approving a plan and project for the industrial development of the city by the construction of a building of specified dimensions and the leasing thereof to Charleston Manufacturing Company, a corporation, the estimated cost of which was to be paid by the issuance and sale of $300,000 of the city's general obligation bonds in the manner in said act provided. That plan was, as the act requires, submitted to and by the Division of Resources and Development approved on August 17, 1961. (The Division of Resources and Development was thereafter succeeded by the Division of Commerce and Industrial Development. Laws 1961, H.B. No. 130, 1961 Cum.Supp., Chap. 255, RSMo 1959, V.A.M.S.)

On August 29, 1961, the city, as required by the act, duly passed its ordinance reaffirming said project in the form approved

by the Division of Resources and Development and, in accordance with further provisions of the act, called an election to be held on September 26, 1961, for the purpose of submitting to the qualified voters of the city a proposition to authorize the city to incur an indebtedness of $300,000, secured by the bonds in question, for the purpose of providing funds for said industrial development project. At that election the electors approved the proposal by a vote of 1808 for and 177 against. Thereafter, on October 2, 1961, pursuant to ordinance duly enacted, the city authorized the issuance of said bonds in the form in said ordinance provided and approved by vote of the people and caused to be prepared, executed and presented to respondent one of said bonds for registration, together with a transcript of the proceedings held by the city and the Division of Commerce and Development and its predecessor in connection with the approval of the project, accompanied by tender of the proper fees. Respondent refused and will continue to refuse to register the bond unless directed by this court so to do.

In support of his position, respondent challenges the validity of Constitutional Amendment No. 4 on grounds (1) it violates § 2, Art. XII, of the constitution by submitting two amendments in one, and (2) the ballot title under which said amendment was submitted was invalid in several respects. He also challenges numerous provisions of the act implementing § 23(a) on grounds, among others, that (1) some of its provisions are broader than the authorization granted by § 23(a); (2) some of its provisions are restrictive of the powers granted by § 23(a); (3) some of its provisions constitute an invalid delegation of legislative power to the Division of Commerce and Industrial Development; and (4) the proposition submitted to the voters of the city was not sufficient in form to authorize the project proposed. Of instant concern, however, is respondent's challenge of the validity of the emergency clause contained in the act on grounds it is in

violation of §§ 29 and 52(a), Article III, of the Constitution of Missouri. He asserts that inasmuch as the proceedings inaugurated and held by the city, as provided in the act for authorization to issue the bonds, were completed before the legally effective date of the act they are void as a matter of law. Of course, if that contention is sound, none of the other contentions herein made can properly be before the court for consideration.

Section 29, Article III, insofar as pertinent, reads:

"No law passed by the general assembly shall take effect until ninety days after the adjournment of the session at which it was enacted, except an appropriation act or in case of an emergency which must be expressed in the preamble or in the body of the act, the general assembly shall otherwise direct by a two-thirds vote of the members elected to each house, taken by yeas and nays; * * *."

Section 52(a), Article III, provides:

"A referendum may be ordered (except as to laws *necessary for the immediate preservation of the public peace, health or safety*, and laws making appropriations for the current expenses of the state government, for the maintenance of state institutions and for the support of public schools) * * *. Referendum petitions shall be filed with the secretary of state not more than ninety days after the final adjournment of the session of the general assembly which passed the bill on which the referendum is demanded." (Emphasis supplied.)

Relator offers two answers to respondent's contention based upon these constitutional provisions. It says, first, that § 23(a) is self-enforcing and that the bonds are valid regardless of whether the enabling act became effective on the date of its approval by the Governor, June 26, 1961, or ninety days after adjournment of

the legislature, on October 13, 1961. It is difficult to rationalize that contention with relator's petition, which alleges the city's meticulous compliance with the act, and the exhibits attached to the petition, which definitely reveal that the proceedings held by the city in attempting to avail itself of the privilege to incur indebtedness for the purposes authorized by § 23(a) expressly predicated every step taken in that respect upon the provisions of the act. More important, however, is the clear wording of § 23(a) itself. It grants to the city the privilege of creating indebtedness by popular vote in addition to four other such authorized purposes found in Article VI, but, in so doing, it also expressly limits that privilege to the purchase, construction, extension or improvement of *plants to be leased or otherwise disposed of pursuant to law for manufacturing and industrial development.* Relator tacitly concedes that, until the enabling act here in question became effective, there was no adequate and complete law whereby the city could proceed to incur indebtedness to be secured by the city's general obligation bonds for the very definitely limited purposes set forth in § 23(a). The act itself so indicates. It is entitled: "An act relating to projects for industrial development, and general obligation and revenue bonds for industrial development projects, with an emergency clause." Among other provisions, the act makes it a condition precedent to valid issuance of such bonds that a detailed plan to carry out a project for industrial development shall first be submitted to and approved by the Division of Commerce and Industrial Development in accordance with certain standards fixed by the act and that thereafter the bonds be submitted to the voters in the manner by the act prescribed. We are forced to conclude from the express wording of § 23(a) that it was not intended to be and, by its terms, could not be self-enforcing.

The second answer advanced by relator is that under the existing decisions of this court the emergency clause is not in violation of §§ 29 and 52(a) of Article III. There is no doubt that if the act constitutes an emergency measure within the meaning of the foregoing provisions of the constitution, then a properly worded emergency clause incorporated therein would make it effective from and after its enactment and approval by the Governor on June 26, 1961, and the proceedings for the project here in question are (in that respect) authorized by law. But, if the act does not in fact constitute an emergency measure within the meaning of the foregoing constitutional provisions or come within the other exceptions therein enumerated, then, by virtue of the provisions of § 29, Art. III, of the constitution, it did not become effective until ninety days after the adjournment of the 1961 session of the general assembly and the proceedings taken by the city are without authority of law. This, for the reason that the 1961 session adjourned sine die July 15, 1961, and the ninety-day bills enacted at that session did not become effective until October 13, 1961. Consequently, if it be determined that the act did not become effective until October 13, 1961, relator cannot maintain any action to enforce registration of the "bonds" here in issue.

In 1920, this court, in construing the purpose and effect of provisions of the Constitution of 1875 from which the above quoted §§ 29 and 52(a), Article III, of our present constitution are taken, held they, of necessity, were to be read and considered together. And so construing them, it was further held that no act subject to the referendum provisions of § 52(a) could go into effect earlier than 90 days after the adjournment of the session at which it was enacted; that neither could an act subject to referendum be made effective at an earlier date by the mere legislative declaration that an earlier effective date was necessary for the immediate preservation of the public peace, health or safety; and that the courts are vested with the right and duty to measure the act "by the yardstick

51

of the constitution" and determine whether in fact its provisions are "necessary for the immediate preservation of the public peace, health or safety." State ex rel. Westhues v. Sullivan, 283 Mo. 546, 224 S.W. 327, 333–339. In that case it was held that an emergency clause in the then recently enacted Workmen's Compensation Act was not sufficient in form or substance to support a finding that its immediate effectiveness was "necessary for the immediate preservation of the public peace, health or safety."

The Sullivan case has been consistently approved annd followed by this court en banc in State ex rel. Pollock v. Becker, 289 Mo. 660, 233 S.W. 641, 644; by this court en banc in Fahey v. Hackmann, 291 Mo. 351, 237 S.W. 752, 761, wherein it was held that, despite the recitals of an emergency clause to the effect that the soldier and sailor beneficiaries named in an act authorizing the issuance of $15,000,000 of State of Missouri World War soldier bonus bonds were in "dire need of the partial compensation," it did not adequately declare "a 'peace, health or safety' clause" within the meaning of the constitution and that such a clause would have been ineffective if it did; and by this court en banc in State ex rel. State Highway Commission v. Thompson, 323 Mo. 742, 19 S.W.2d 642, 647, wherein the emergency clause declared the necessity of making immediately effective an act authorizing the issuance of $75,-000,000 of State of Missouri bonds to defray the cost of completion of the state highway system and the relief of traffic congestion and other incidental matters, thereby creating an emergency requiring the act to be in effect from and after its passage and approval. It was there held that: "The act, whether considered as a whole or with reference to a single one of its provisions, cannot be regarded as an emergent police measure. The early completion of the state highway system, the reimbursement of counties for money expended on the state highway system, the relief from congestion of traffic in areas adjacent to St. Louis and Kansas City, and a beginning of supplementary state highways in counties, are all desirable, and when accomplished will no doubt greatly contribute to the public welfare, and *indirectly* promote the public peace, health, and safety. But it cannot be affirmed that any of these things are necessary for the *immediate* preservation of the public peace, health or safety. State [ex rel. Westhues] v. Sullivan, 283 Mo. 546, 224 S.W. 327; State [ex rel. Pollock] v. Becker, 289 Mo. 660, 233 S.W. 641; State [ex rel. Harvey] v. Linville, 318 Mo. 698, 300 S.W. 1066." (Italics that author's.) See also Inter-City Fire Protection District of Jackson County v. Gambrel, 360 Mo. 924, 231 S.W.2d 193, 199–200.

We have carefully read the cases urged upon us by relator, to wit: State ex inf. Gentry v. Curtis, 319 Mo. 316, 4 S.W.2d 467, and Board of Regents for Northeast Missouri State Teachers College v. Palmer, 356 Mo. 946, 204 S.W.2d 291, and find that they turn upon the contentions made in the briefs in each of those cases filed and that nothing in either case modifies the principles announced in the cases hereinabove cited.

The act here in question obviously is not one "making appropriations for the current expenses of the state government, for the maintenance of state institutions, [or] for the support of public schools." The emergency clause declares, in substance, that in the absence of lawful authority to attract new industries by the means in the act provided, Missouri municipalities cannot effectively compete with those of other states and that, therefore, the peace, health and safety of the citizens are in jeopardy. In its brief, relator also says: "This court can take judicial knowledge of the fact that the economic life of many sections of the State of Missouri, because of vast improvements in and mechanization of agriculture that have taken place in the past few years, is in serious condition. It is no secret that our State has not kept up with the average of national population growth,

and that in all our agriculture areas unemployment is a very serious problem. Whether a citizen has a good job, a decent place to live and enough to eat is very necessary for the public peace, health and safety." Giving due consideration to the declarations of fact contained in the emergency clause and the facts of which relator says we may take judicial knowledge, can we say with conviction that immediate effectiveness of the act was *necessary for the immediate preservation* of the public peace, health or safety of the citizens of this state? It could be said that the passage of time has demonstrated that it was not. But, assuming that we should view the matter as of the date the act was under consideration by the legislature, and giving full faith and credit to the facts upon which the legislature based its declaration of an existent emergency and taking judicial notice of all facts then of common knowledge, we still are constrained to hold that no emergency existed within the meaning of §§ 29 and 52(a), Article III, of the constitution.

The petition for writ of mandamus is dismissed.

All concur.