Godfrey P. PADBERG, Samuel B. Murphy, Arthur S. Margulis and Harry N. Soffer, Members, All constituting the Board of Election Commissioners of St. Louis County, Missouri, Plaintiffs-Respondents,

v.

Lawrence K. ROOS, County Supervisor, John O'Hara, Maurice Osborn, Gerald A. Rimmel, Edward E. Murphy, Jr., Brainerd W. La Tourette, Jr., Boris M. Martin and Maurice L. Stewart, Members of the County Council, Dorothy Wilson, County Clerk, and St. Louis County, Missouri, a Municipal Corporation, Defendants-Appellants.

No. 51138.

Supreme Court of Missouri, En Banc.

April 11, 1966.

Rehearings Denied July 11, 1966.

Norman Barken, St. Louis, for respondents Padberg, Murphy, Margulis and Soffer, all constituting Board of Election Com'rs of St. Louis County.

John H. Lashly, St. Louis, for respondents John O'Hara, Maurice Osborn and Boris M. Martin, members of St. Louis County Council.

Donald J. Stohr, St. Louis County Counselor, Joseph B. Moore, Deputy County Counselor, Clayton, for defendants; Norman C. Parker, St. Louis, special counsel.

FINCH, Judge.

This is an appeal from a declaratory judgment which held that two ordinances proposing charter amendments to the Charter of St. Louis County (herein referred to as the Charter) did not receive sufficient votes for passage and submission to a vote of the people.

Since March 1950, St. Louis County has been a charter county. Its Charter was adopted pursuant to the Constitution of Missouri, 1945, Article VI, Sections 18(a)–

(*l*), V.A.M.S. Amendment is covered in Article VIII of the Charter. Section 82 thereof provides three methods of amendment. One of these, Section 82(2), is "By ordinance adopted by the Council and submitted to the voters at a general or special election and approved by a majority of those voting on the proposition."

In September 1964, Ordinance 3345, proposing amendment of the Charter to make the office of County Highway Engineer appointive rather than elective, and Ordinance 3346, to amend by extending the merit system to certain employees, were introduced in the County Council, which is the governing and legislative body of the County. The ordinances received four yea and three nay votes, both were approved by the County Supervisor, the executive officer of the County, and then certified by the County Clerk to the Board of Election Commissioners to be submitted to the voters on November 3, 1964.

When the two ordinances were received by the County Board of Election Commissioners it took the position that the ordinances had not received a sufficient number of votes for passage and were invalid and should not be submitted to a vote of the people. The members of the Board instituted an action for declaratory judgment to determine whether or not the ordinances had been validly passed for submission to the voters. The three Councilmen who had voted against the adoption of these two ordinances filed an answer, counterclaim and cross claim in which they asserted the invalidity of the ordinances. The County, the County Council and the County Supervisor filed an answer and a counterclaim seeking a mandatory injunction requiring the submission of the ordinances to a vote by the people. Our disposition of the case does not require a detailed recital of these rather complex pleadings.

■ A question was raised as to the right of the Board of Election Commissioners to maintain this action. It is urged that they were acting in a ministerial capacity only in submitting these proposals to the voters and that they had no right to go behind the ordinances to test the validity of their passage. We are of the opinion that the Board was entitled to file and maintain this action. Civil Rule 87.02, V.A.M.R. and Section 527.020 (all references to statutes are to RSMo 1959, V.A.M.S.) specifically provide for declaratory relief with respect to municipal ordinances and questions of construction or validity thereof. The case of Kansas City v. McGee, 364 Mo. 896, 269 S.W.2d 662, involved a declaratory judgment action by Kansas City and its Mayor and Council against members of a committee who had filed an initiative petition with the Council. The question to be adjudicated was whether the City Council was justified in refusing to submit the proposal to the people for a vote. The court did decide the question presented and held that the initiative petition proposing such ordinance was fatally defective and need not be submitted to a vote as proposed in the initiative petition. We think it is clear that the trial court in this instance was correct in overruling the motion of appellants to dismiss the petition herein on the ground of lack of capacity of the Board to maintain the action.

There are seven members of the County Council. Appellants contend that these ordinances proposing charter amendments, fixing the form of ballot, and providing for submission of the charter amendments to a vote of the people require only a majority vote, which would be four affirmative votes. It is respondents' contention that five votes were necessary for passage.

It will be noted that Section 82(2) provides simply for amendment by ordinance adopted by the Council (and the approval of the voters). The section does not specify the vote by which such amendment must be passed by the Council. If Section 82 had stated specifically the number of votes required for passage, the section would have been complete within itself and there would have been no room for doubt. It does not so specify, however, and hence it is neces-

sary to look elsewhere in the Charter to determine that question.

Appellants rely upon Section 13 of Article III of the Charter. It deals with ordinances and resolutions generally and includes the following: "An affirmative vote by a majority of the members of the entire Council shall be necessary to pass any ordinance or resolution except as otherwise provided in this charter." Appellants maintain that this charter provision, which applies to ordinances generally, applied to and governed the vote required on the proposed charter amendments. Respondents, on the other hand, rely on Section 18 of Article III, which is as follows:

"Emergency ordinances shall require the affirmative vote of not less than five members of the Council and shall take effect immediately upon their enactment. Emergency ordinances shall be those ordinances relating to the following:

"(1) Calling an election or providing for the submission of any proposal to the people;

"(2) Appropriations for the support of the County government and the payment of principal and interest on the County's debts;

"(3) Borrowing of funds in anticipation of taxes;

"(4) Fixing tax rates;

"(5) Amendments to the zoning ordinance, provided that a general revision of the zoning ordinance shall not be deemed to be an emergency ordinance;

"(6) The immediate preservation of the public peace, health, safety and welfare, in which ordinance the emergency has been declared."

Respondents assert that the charter amendment ordinances provided for submission of these proposals to the people and fall within the language of Section 18(1), making them emergency ordinances which required five affirmative votes.

The question we must determine is whether passage of charter amending ordinances referred to in Section 82 contemplates passage by majority vote as provided for ordinances generally in Section 13 or whether they are to be treated as emergency ordinances under Section 18, thus necessitating five affirmative votes. This involves first a determination of whether provisions of the Charter relating to emergency ordinances are even applicable to the process of charter amendment, and secondly whether, if applicable, these ordinances were in fact emergency measures. Of these in order:

What is the nature of the act of a legislative body in proposing constitutional amendment? Do procedural requirements specified in the constitution (or charter) with respect to legislation generally apply to the handling of proposed constitutional amendments? Do provisions such as ones for all acts or resolutions to be submitted to the executive officer for approval or veto, ones specifying the number and times of reading, and ones as to the title requirements of the statute being considered apply to the constitution amending process?

Exactly this question arose in the early case of Hollingsworth et al. v. State of Virginia, 3 Dall. 378, 1 L.Ed. 644, decided in 1798. It involves the question of whether the Eleventh Amendment to the Constitution of the United States had been adopted. This amendment had been proposed by two-thirds of both the Senate and House of Representatives pursuant to Article V of the Constitution and subsequently had been ratified by the required number of states. The attack on the amendment was on the basis that Article I, Section 7, of the Constitution also was applicable and had not been followed. That section provides, in part, as follows:

"*Every* Order, *Resolution,* or Vote to which the Concurrence of the Senate and House of Representatives may be necessary (except on a question of Adjournment) *shall be presented to the President of the United States;* and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of

Representatives, according to the Rules and Limitations prescribed in the Case of a Bill." (Emphasis supplied.)

It was pointed out that the Resolution, following passage by both houses of Congress, had not been submitted to the President of the United States, pursuant to said Section 7 of Article I which specified that *every* order, *resolution,* or vote (except on a question of adjournment) should be so submitted. When the case was argued in the Supreme Court of the United States and this proposition was advanced, Mr. Justice Chase stated, "There can, surely be no necessity to answer that argument. The negative of the President applies only to the ordinary cases of legislation. He has nothing to do with the proposition, or adoption, of amendments to the Constitution." The court, in a unanimous opinion, held that the Eleventh Amendment was constitutionally adopted, thereby establishing the principle that when a legislative body is acting in a constitution making rather than a legislative capacity, the provisions of the Constitution relating to requirements applicable to legislation do not apply.

This same basic principle has been followed in the decisions of this state. In State ex inf. McKittrick, Atty. Gen. ex rel. Ham v. Kirby et al., 349 Mo. 988, 163 S.W. 2d 990, this court considered the validity of an amendment to the *Charter* of the City of St. Louis. The Board of Aldermen had proposed an ordinance entitled: "An Ordinance submitting a proposed amendment to the Charter of the City of St. Louis to the qualified voters of the city, and providing for an election to be held therefor, and for the manner of voting thereat, and for the publication of this ordinance." Section 13 of Article IV of the Charter of the City of St. Louis provided that, *"No bill, except a*

*general appropriation bill,* which shall only embrace matters on account of which moneys are appropriated, shall contain more than one subject, which shall be clearly expressed in its title." (Emphasis supplied.) It was contended that the ordinance proposing the charter amendment "was invalid because the title did not specify the contents of the proposed amendment." This court then said, 163 S.W.2d l. c. 993: "We are therefore confronted with the question as to whether the requirements of the charter applying to the titles of ordinary ordinances have any application to the titles of ordinances, resolutions or other legislative actions submitting to the voters a proposed charter amendment." The court points out that the Charter provision of the City of St. Louis for initiation of amendments, followed by a vote of the people, was similar to the method contained in the Missouri Constitution and in the constitutions of a majority of the states. The court then observes, 163 S.W.2d l. c. 993: "In construing such provisions it has been universally held that the legislature, in proposing an amendment, is not exercising its ordinary legislative power but is acting as a special organ of government for the purpose of constitutional amendment. State ex rel. [City of Memphis] v. Hackman, 273 Mo. 670, 202 S.W. 7; Edwards v. Lesueur, 132 Mo. 410, 33 S.W. 1130, 31 L.R.A. 815; People ex rel. [Stewart] v. Ramer, 62 Colo. 128, 160 P. 1032; State v. American Sugar Refining Co., 137 La. 407, 68 So. 742; Re Opinion of the Justices, 118 Me. 544, 107 A. 673, 5 A.L.R. 1412. In the Lesueur case we held that the constitutional requirement applying to ordinary bills that they be read three times before final passage did not apply to a joint and concurrent resolution submitting a constitutional amendment.[1] In Cooney v.

---

1. The Lesueur case was one in which this court considered a suit by a property owner to enjoin the Secretary of State from submitting to the voters of the state a proposed constitutional amendment whereby the seat of government would have been moved from Jefferson City to Sedalia. The resolution had re-

ceived a majority vote but it had not been read on three different days in each house of the General Assembly. As the quotation from the Kirby case indicates, this court held in the Lesueur case that the requirement of three readings required by the Constitution did not apply to a resolution proposing a consti-

Foote, 142 Ga. 647, 83 S.E. 537, Ann.Cas. 1916B, 1001, it was directly held that the constitutional requirement in regard to the title of legislative bills had no application to joint and concurrent resolutions submitting constitutional amendments."[2] The court held that the charter provision relative to the title to *all* bills had no relation to *charter amendment*.

The case of State ex rel. Jones v. Atterbury, Mo., 300 S.W.2d 806, did not involve the constitution making or amending process, but it does illustrate further the fact that constitutional provisions dealing with legislative activity are limited to acts of the Legislature performed in its legislative capacity and do not apply to actions when the Legislature is acting in a nonlegislative capacity. The Atterbury case involved mandamus to compel the Comptroller to approve expenses incurred by an interim legislative committee member. A joint committee on juvenile delinquency was created by a concurrent resolution adopted by both houses of the General Assembly. The validity of the resolution was attacked on the basis that its adoption was in violation of provisions of the Missouri Constitution because the resolution was not presented to the Governor for his consideration and was not proceeded upon as in the case of a bill. Specifically, it was contended that Article III, Section 31,[3] and Article IV, Section 8,[4] were violated.

The court discusses the history of these provisions and concludes that joint resolutions, as that term is used in Article III, Section 31, and concurrent resolutions, as used in Article IV, Section 8, are those resolutions which have the force and effect of law. The court then concludes that the concurrent resolution in question was administrative or procedural in character, that it did not have the force and effect of law, and that its submission to the Governor was not required by the constitutional provisions in question. In so holding, this court recognized that while the two constitutional provisions used *general,* all inclusive language, they pertained only to acts of the Legislature when acting in its legislative capacity. This is in harmony with the earlier decisions in Missouri hereinbefore discussed and with the conclusion of the Supreme Court of the United States in the Hollingsworth case wherein such provisions (presentation to the executive for signature, having a proper title, reading the resolution on three different days, etc.) were held to have no application to resolutions or proposals to amend the Constitution.

tutional amendment and that it had been validly passed and should be submitted to a vote of the people.

2. For cases from other states containing helpful discussions of this principle that constitutional provisions dealing with legislative requirements are not applicable to acts by the Legislature when acting in its constitution making capacity, see the cases of Commonwealth ex rel. Atty. Gen. v. Griest, 196 Pa. 396, 46 A. 505, 50 L.R.A. 568, and Hutcheson v. Gonzales, 41 N.M. 474, 71 P.2d 140.

3. Article III, Section 31, reads as follows: "All bills and joint resolutions passed by both houses shall be presented to and considered by the governor, and within fifteen days after presentation he shall return them to the house of their origin endorsed with his approval or accompanied by his objections. If the bill be approved by the governor it shall become a law. When the general assembly adjourns, or recesses for a period of thirty days or more, the governor may return within forty-five days any bill or resolution to the office of the secretary of state with his approval or reasons for disapproval."

4. Article IV, Section 8, reads as follows: "Every resolution to which the concurrence of the senate and house of representatives may be necessary, except on questions of adjournment, going into joint session, and of amending this constitution, shall be presented to the governor, and before the same shall take effect, shall be proceeded upon in the same manner as in the case of a bill; provided, that no resolution shall have the effect to repeal, extend, or amend any law."

■ The Charter of St. Louis County is before us in this case and we observe that Section 16 of Article III provides that *all ordinances* passed by the Council shall be submitted to the County Supervisor, who is the executive officer of the county. It provides a right of veto and for a method of passing ordinances over the veto of the Supervisor. It would seem obvious, under the doctrine of Hollingsworth, Lesueur, Kirby and Atterbury, that this section has application to legislation making but would not apply to the process of amending the Charter. This is true even though the section uses the language "all ordinances." It appears that the County Supervisor did in fact affix his signature to the two ordinances proposing the charter amendments but this was unnecessary. If he had not approved them (whether not submitted to him at all or he vetoed) this would not have affected the validity of the proposed charter amendments. Such provisions as Section 16 apply only to the legislative process. The earlier cases discussed compel this conclusion. We could not decide otherwise without overruling those cases.

■ We also observe that Section 17 of Article III of the Charter specifies the effective date for *all* ordinances other than emergency measures (unless a notice of intention to circulate referendum petitions is filed in the manner prescribed, in which event the effective date of the ordinances is postponed for a period of time to permit circulation and filing of referendum petitions). This provision relative to suspension for referendum likewise is not applicable to the constitution making process. This is the necessary result of our holding in State ex rel. Tate v. Sevier, 333 Mo. 662, 62 S.W.2d 895, 87 A.L.R. 1315. The General Assembly had passed a bill calling an election for the purpose of electing delegates to a state convention to vote upon ratification of a proposed amendment to the Constitution of the United States. A petition was filed with the Secretary of State asking that said bill be re-

ferred to the people for their approval or rejection as provided by the *referendum provisions* of the Constitution and statutes of Missouri. The Secretary of State refused to accept the petition and a proceeding in mandamus was filed to compel him to accept the filing. In denying the writ of mandamus, Judge Frank, speaking for this court en banc, pointed out that the Legislature in this activity in connection with ratification of a proposed amendment to the federal Constitution was not acting in a discharge of its legislative duties. The court then said, 62 S.W.2d l. c. 898: "It therefore follows that when the Legislature enacted House Bill 514, which provides the method for assembling a convention, it was not, strictly speaking, performing the functions of a legislative body for the state, but was acting as a representative of the people, pursuant to authority delegated to it by the federal Constitution to provide a method for obtaining and assembling conventions to represent the people in ratifying or rejecting proposed amendments to the federal Constitution. Such enactment was, therefore, not lawmaking for the state, and for that reason is not subject to the referendum.

\* \* \* \* \* \*

"Without doubt the enactment of House Bill 514, providing for the assembling of the convention, was but a necessary preliminary step preparatory to the final action of the state acting through the convention. If the final action of the convention is not a legislative act, it must logically follow that a preliminary step preparatory to such final action is not a legislative act. It is a familiar adage that the whole is not different from the parts of which it is composed. Under any view of the case, House Bill 514 is not an act of the legislative assembly within the meaning of the referendum provisions of the state Constitution, and for that reason is not subject to the referendum."

■ By the same reasoning, the action of the people in voting on proposed charter

amendments would not be a legislative act, and consequently the preliminary step of proposing such constitutional amendments and providing for a vote thereon by the people would not be a legislative act and would not be subject to referendum. This is consistent with the decisions in the Lesueur, Kirby and Atterbury cases.

■ Section 18 of Article III of the Charter, the section relied on by respondents, deals with emergency ordinances. Does it apply to constitution making or merely to legislation? The very reason for emergency legislation is a manifest necessity for *immediate legislative* change. This is the basis for making the legislation effective at once rather than after the usual delay between passage and effective date (this also involves preventing the greater delay involved in referendum of legislative proposals). As stated in 82 C.J.S. Statutes § 401c, page 965, "Broadly speaking, an emergency justifying the legislature in making a statute effective on its passage consists in an unforeseen combination of circumstances calling for immediate action to preserve the public peace, health, or safety, or to support the state or its existing institutions."

■ The two charter amendments proposed by ordinance dealt with making the office of County Highway Engineer appointive rather than elective, and extending the merit system to certain employees. These amendments could not become effective unless and until approved by a vote of the people. This is true of every charter amendment proposed by ordinance. It cannot become effective immediately. It is simply the preliminary step in the process of charter amendment. It initiates a proposal on which the electorate will decide. It is for this reason that this court consistently has held that such acts by the legislative body need not comply with constitutional title requirements for legislation, need not comply with constitutional requirements as to a particular number of readings, and need not even comply

with constitutional provisions that legislative acts be presented to the executive officer for his approval or veto. Likewise, the section of the charter dealing with emergency legislation is not germane to the constitution amending process. The action of the legislative body simply is the initial step therein. No new law dealing with some emergency exists after the legislative body has enacted the amendment proposal. This conclusion is not the enunciation of any new doctrine or principle. It merely applies what this court has stated over a long period of our state's history in the Lesueur, Kirby, Atterbury and Sevier cases, as well as the principle of Hollingsworth v. State of Virginia.

■ Even if we assume and hold that Section 18 is applicable to the charter amending process, we still conclude and hold that the two ordinances were adopted and should have been submitted to a vote of the people. The ordinances must be emergency ordinances to fall within the terms of Section 18. This court has held repeatedly that the question of whether a legislative act is in fact an emergency measure is a judicial question, not a legislative one. Such cases have involved both statutes and ordinances. State ex rel. Asotsky et al. v. Regan, 317 Mo. 1216, 298 S.W. 747, 55 A.L.R. 773; State ex inf. Taylor, Atty. Gen., ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762; Inter-City Fire Protection District of Jackson County v. Gambrell, 360 Mo. 924, 231 S.W.2d 193; State ex rel. City of Charleston v. Holman, Mo., 355 S.W.2d 946.

There was no evidence offered by respondents to show that these two ordinances were emergency matters. The ordinances themselves contained no language or statement of emergency or even that an emergency measure was intended. There is nothing in the subject matter of either ordinance which even suggests any emergency. One transfers some employees to the merit system. The other changes an

office from an elective to an appointive status. It is hard to imagine anything less emergency in nature. Respondents rely solely on the provisions of Section 18 to make these emergency ordinances. Expressed as a syllogism, their position is: Every ordinance submitting something to a vote of the people is an emergency ordinance under Section 18; Ordinances 3345 and 3346 submit matters to a vote of the people; therefore Ordinances 3345 and 3346 are in fact emergency ordinances. Such a conclusion is at variance with the doctrine that the determination of whether a legislative act is in fact emergency in nature is judicial. We must conclude that these two charter amending ordinances were not in fact emergency measures.[5] Not being such, they required only four votes for passage under Section 13. In reaching this decision we have considered the Asotsky and North Kansas City cases, supra, cited and relied on by respondents. Asotsky involved a cigarette tax measure and whether it was subject to referendum. The North Kansas City case did involve an ordinance calling an election in connection with a proposed annexation of property which both Kansas City and North Kansas City sought to annex. Both cases recognize that whether a legislative act is in fact emergency is a judicial question. We will not undertake to compare and distinguish. We hold simply that nothing in either decision leads us to the conclusion that either Ordinance 3345 or 3346 was in fact emergency in nature.

The judgment is reversed and remanded and the trial court is directed to dismiss plaintiffs' petition and the counterclaim and cross claim of defendants O'Hara, Osborn and Martin. It is directed further to issue its mandatory injunction, prayed for in the counterclaim of appellants, directing plaintiffs, the members of the Board of

Election Commissioners of St. Louis County, Missouri, to submit the charter amendments proposed by Ordinances 3345 and 3346 to the voters of St. Louis County, Missouri, at the general election to be held on November 8, 1966.

STORCKMAN, C. J., and HYDE and EAGER, JJ., concur.

DONNELLY, J., dissents in dissenting opinion filed.

HOLMAN and HENLEY, JJ., dissent and concur in dissenting opinion of DONNELLY, J.

DONNELLY, Judge (dissenting).

The Charter of St. Louis County requires that an amendment to the Charter must be approved by the people. Section 18 of Article III of the Charter states unequivocally that an ordinance providing for the submission of any proposal to the people is an emergency ordinance and that such an ordinance shall require the affirmative vote of not less than five members of the County Council. I find no ambiguity. The principal opinion undertakes to make a determination as to whether Ordinances 3345 and 3346 are in fact "emergency" measures. I would not do this. I feel the people of St. Louis County determined the question when they adopted Section 18 of Article III as part of their Charter. If we had a case before us where the County Council had sought to enact an ordinance under Subsection (6) of Section 18, the Council (not the people) would have declared the emergency and would have engaged in a legislative act. In that situation, the Asotsky case, cited in the principal opinion, would rule, and the question would be for judicial determina-

---

5. For cases in which more pressing matters were held not to be emergencies, see State ex rel. State Highway Commission v. Thompson, 323 Mo. 742, 19 S.W.2d 642; Fahey v. Hackmann, 291 Mo. 351, 237 S.W. 752; State ex rel. Westhues v. Sullivan, 283 Mo. 546, 224 S.W. 327; State ex rel. City of Charleston v. Holman, Mo., 355 S.W.2d 946.

tion. This is not the situation in the instant case.

I respectfully dissent.

On Motion for Rehearing

PER CURIAM.

In their motion for rehearing respondents urge that the judicial power to determine whether an emergency in fact exists is limited to a review of declarations of emergency by a legislative body. It has no application, say respondents, to declarations by the people in their charter, and such determinations are conclusive on the courts and not subject to any review. The cases of State ex inf. Taylor, Attorney General, ex rel. Kansas City v. North Kansas City, Mo., 228 S.W.2d 762, and State ex rel. Asotsky v. Regan, 317 Mo. 1216, 298 S.W. 747, 55 A.L.R. 773, are cited as being in support of this proposition.

The later of these two cases is the North Kansas City case. What we say herein would apply in principle to a discussion of the Asotsky case, and hence we will discuss only the North Kansas City case in this per curiam.

One question decided in the North Kansas City case was that an ordinance adopted by the City Council of Kansas City was an emergency measure. Kansas City was a constitutional charter city and its charter contained a provision that "any ordinance * * * providing for the submission of any proposal to the people" was an emergency ordinance. In the title of the ordinance which was adopted, as well as in the body thereof, it was declared that the ordinance was an emergency measure. The court's opinion referred to the fact that the city charter did contain the provision above referred to and that it was "not an unlawful or unreasonable one." This language seems to say that this charter provision made an ordinance submitting a proposal to the people an emergency measure in and of itself. However, in the same opinion,

228 S.W.2d on page 773, the court recognized that "it is the function of the courts in a judicial proceeding to determine whether a statute or an ordinance is in fact an emergency measure within the law." Subsequently, the opinion went on to say: "This proposal requiring a submission to the people for their approval or rejection in an election was an emergency measure. Relator's City Council had the lawful right to so denominate this an emergency measure and *we hold that in fact it was such.*" (Emphasis supplied.) Thus, the court noted in the North Kansas City case that the City Council in its ordinance declared it to be an emergency ordinance, and the court then held that the ordinance, passed by the City Council, was in fact an emergency measure. The court thereby exercised the judicial function of making such a determination. It thus appears that the court assigned two bases for its decision upholding the ordinance as an emergency measure. It cannot be said that the decision is based solely on the proposition that the charter provision conclusively made the ordinance an emergency measure, because, in that event, the court would not have gone ahead and judicially determined that it was an emergency measure in fact.

■ Missouri is in accord with the prevalent view that a legislative declaration stating an act to be an emergency measure is entitled to great weight, "but is not conclusive, because the courts possess the final authority to determine whether an emergency in fact exists." 16 Am. Jur.2d, Constitutional Law, § 171, p. 390. See also 37 Am.Jur., Municipal Corporations, § 152, p. 765; Annotations: Emergency Clause in Ordinance, 35 A.L.R.2d 586, 55 A.L.R. 779. Such right is not conferred specifically in any constitutional provision but is an inherent judicial function applicable alike to enactments of the state legislature and of municipal bodies.

Whether respondents are correct in their contention that the *charter* declaration of emergency is conclusive upon the courts

involves a consideration of (1) the status of a county or city and of a charter which it adopts, and (2) the nature of the authority of the court to judicially determine whether an emergency in fact exists.

A county or a city, charter or otherwise, is *imperium in imperio*, that is, a government within a government. The people of a county or city, as such, are not sovereign. A non-charter county or city has the powers conferred on it by the Constitution and statutes of the state. A charter does not transform a county or city into a government apart from and superior to the state. Provisions of a county or city charter which substitute for state legislation with respect to that particular county or city must conform to the Constitution and laws of the state in matters of general interest and statewide concern and are subject thereto. Such charter provisions, in so far as that county or city is concerned, have the force and effect of a statute of the legislature and can be declared invalid for the same reasons as acts of the legislature. Kansas City, Missouri v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S.W.2d 195, 202. In addition, of course, the charter must conform to the general laws of the state and when the provisions thereof do not so conform they are invalid. The contention that provisions of a county or city charter are inviolate because they were made by the people themselves rather than a legislative body is not sound. An example will illustrate. In McDonnell Aircraft Corp. v. City of Berkeley, Mo., 367 S.W.2d 498, this court held invalid an amendment to the charter of the City of Berkeley whereby it had annexed additional territory. The city had followed its charter in making the annexation. The contention was made that this annexation in the form of a charter amendment was an action of the people themselves acting under authority of the Missouri Constitution to adopt an amended charter and that such action was not subject to judicial review as to reasonableness. This court expressly held that this action by the people

themselves was subject to judicial review and the annexation was held to be arbitrary and unreasonable, and therefore invalid. Thus, the action of the people in the form of an amendment to their charter was not conclusive on the courts and was not immune from an examination as to reasonableness. See also City of Hannibal v. Winchester, Mo., 391 S.W.2d 279.

We desire to make it clear that our decision in this case does not affect the result in State ex inf. Taylor, Attorney General, ex rel. Kansas City v. North Kansas City, supra. That case was correctly decided in that the decision of the court rests primarily on its holding that the emergency declared by the City Council was in fact an emergency. Other considerations mentioned were unnecessary to the opinion.

HOLMAN, HENLEY and DONNELLY, JJ., dissent.